**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARIEL DAVIS, LACIE DAVIS, AND TAYLOR DAVIS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: _____ |
| v. | **CLASS ACTION COMPLAINT** |
| E.L.F. COSMETICS, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Ariel Davis, Lacie Davis, and Taylor Davis ("Plaintiffs"), individually and on behalf of all others similarly situated (collectively, the "Class," as more fully defined below), bring this Class Action Complaint against Defendant e.l.f. Cosmetics, Inc. ("e.l.f." or "Defendant"), and, based upon Plaintiffs' personal knowledge, investigation by retained counsel, and personal belief, allege as follows:

## NATURE OF THE CASE

1.      When consumers shop for products, they expect that companies will follow the law in promoting and advertising those products.

2.      Consumers expect that, if they are sharing their data with companies in connection with a potential transaction, the companies will be transparent about what data is being collected, how it is being used, and by whom.[1] This is particularly the case when companies collect what has come to be known as "biometric data."

3.      Facial scanning technology, which is used for anything from applying filters to photographs to verifying a user's identity, uses biometric data.

4.      Consumers have substantial privacy concerns regarding the use of facial scanning. According to a recent survey, more than 80% of consumers are uncomfortable with apps storing images of their faces.[2] And for good reason: for example, in the not-too-distant past, a then-

---

[1] Lisa Joy Rosner, How Biometric Data Will Shift The Privacy Conversation, *Forbes* (July 2, 2019), *available at* https://www.forbes.com/sites/forbescommunicationscouncil/2019/07/02/how-biometric-data-will-shift-the-privacy-conversation/?sh=38b3ce093f4c.

[2] Danielle Commisso, Concerns Grow Over Consumer Privacy and Facial Recognition Tech, Civic Science (Apr. 20, 2021), *available at* https://civicscience.com/concerns-grow-over-consumer-privacy-and-facial-recognition-tech/#:~:text=Like%20most%20new%20technologies%2C%20younger%20generations%20are%20more,facial%20recognition%20use%20on%20social%20media%20and%20apps.

relatively unknown company, Clearview AI, was caught scraping user photos from social media companies' databases and using facial-recognition technology on those photos to compile a database for secret and illicit surveillance purposes.[3]

5.     In response to the ever-increasing prevalence and proliferation of biometric information collection (whether lawful or not), the Illinois General Assembly passed the Biometric Information Privacy Act of 2008, 740 Ill. Comp. Stat. §§14, *et seq*. ("BIPA").

6.     BIPA recognizes that because biometric information is "unlike other unique identifiers that are used to access finances or other sensitive information," in that it cannot be changed and is "biologically unique to the individual," special protections needed to be placed upon its use, collection, retention, and destruction.

7.     In the language of the BIPA statute itself, the Illinois General Assembly directly addressed the public's stake in this important sphere of data privacy, noting that "[a]n overwhelming majority of members of the public *are weary of the use of biometrics when such information is tied to finances and other personal information.*" 740 Ill. Comp. Stat. §14/5 (emphasis added).

8.     Recognizing that typical consumers are not equipped to defend themselves from large corporations bent on acquiring and monetizing their most private, unchangeable information, the Illinois Legislature, by enacting BIPA, gave consumers a powerful, protective tool.

9.     Despite consumer concerns regarding facial-scanning technology, and BIPA's clear mandate, e.l.f. has refused, and continues to refuse, to inform users that it is using technology

---

[3] Will Knight, Clearview AI Has New Tools to Identify You in Photos, *Wired* (Oct. 4, 2021), *available at* Clearview AI Has New Tools to Identify You in Photos | WIRED.

on its website to collect their biometric facial scans, and neither informs users that their biometric identifiers are being collected, nor asks for their consent.

10.     E.l.f. sells the image of socially responsible cosmetics to consumers, because "[c]lean beauty should be readily accessible to all.  E.l.f. describes its products as cruelty-free professional quality cosmetics at affordable drugstore prices, and invites consumers to virtually "try on" its makeup through its website's "Virtual Try-On" feature. Through this feature, visitors to e.l.f.'s website—including Plaintiffs and the other Class members—are able to view themselves with various makeup products on their face. All a user has to do is enable their computer or phone camera, after which e.l.f.'s website creates a live video feed of the user's face, with the selected makeup products applied on top of the live feed. Alternatively, a user can use their computer or phone camera to take a photo to be used by the website or to upload their own, pre-taken photo to the website.

11.     But, unbeknownst to its website users—including Plaintiffs and the other Class members—e.l.f. collects detailed and sensitive biometric identifiers and information, including complete facial scans, from its users through the Virtual Try-On tool, and it does this without first obtaining their consent, or informing them that this data is being collected.

12.     E.l.f. also fails to disclose to visitors of its website who use the Virtual Try-On tools—including Plaintiffs and the other Class members—that their biometric information or biometric identifiers are being collected or stored.

13.     E.l.f. also fails to inform users of any specific purpose for the collection of their biometric information or biometric identifiers, fails to provide users a schedule setting out the length of time during which that biometric information or biometric identifiers will be collected, stored, used, or destroyed, and fails to comply with BIPA's retention and destruction guidelines.

14.     E.l.f. has violated BIPA—and continues to violate BIPA—each and every time a website visitor based in Illinois uses the Virtual Try-On tool, because e.l.f. continues to collect and store or facilitate the storage of biometric information or biometric identifiers without disclosure to or consent of any of the consumers who try on cosmetics on e.l.f.'s website, necessarily using e.l.f.'s Virtual Try-On tool to do so; and profited from the biometric identifiers and biometric information it possesses.

15.     E.l.f. has also violated BIPA—and continues to violate BIPA—because e.l.f. has not and does not comply with BIPA's permanent destruction guidelines that biometric information and identifiers in e.l.f.'s possession must be permanently destroyed the earlier of when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the consumer's last interaction with e.l.f.'s Virtual Try-On tool.

16.     As a result of e.l.f.'s BIPA violations—violations that are ongoing and continue through the present day—Plaintiffs, individually and on behalf of the other Class members, ask the Court to impose upon e.l.f. the BIPA-mandated statutory penalties relating to the collection, storage, and disclosure of Plaintiffs' biometric identifiers and biometric information, as well as injunctive relief requiring e.l.f.'s destruction of already-collected and stored information, and its adoption of disclosures which inform consumers about e.l.f.'s collection of their biometric data and identifiers.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because: (a) this is a proposed class action in which there are at least 100 Class members; (b) the parties are minimally diverse, as Plaintiffs and Defendant are domiciled in different states; and (c) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs.

18.     This Court has personal jurisdiction over e.l.f. because e.l.f. regularly conducts business throughout Illinois, including offering its Virtual Try-On tool to consumers in Illinois.

19.     Venue is also appropriate in this District under 28 U.S.C. § 1391(b)(2) because, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

### *Plaintiff Ariel Davis*

20.     Ariel Davis is a citizen and a resident of Cook County, in the State of Illinois. While at her residence in Cook County, Illinois, Ariel Davis used the Virtual Try-On tool on e.l.f.'s website two to five times, to try on various types of makeup, with her most recent use occurring in or about January 2022.  Ariel Davis spent approximately thirty minutes using the Virtual Try-On tool during this time.

21.     Ariel Davis does not recall reviewing e.l.f.'s website terms and conditions and did not see any indication that her biometric information would be collected or distributed in e.l.f.'s website terms and conditions. Ariel Davis was also not informed by e.l.f.'s Virtual Try-On tool that her use of the Try-On tool would result in e.l.f. collecting her biometric information and identifiers.

22.     Ariel Davis did not understand that e.l.f. would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool had she been aware of this fact.

23.     E.l.f. never obtained, or attempted to obtain, Ariel Davis's informed, written consent to collect, transmit, store, or process her biometric information, nor did e.l.f. inform Ariel Davis about the length of time her biometric information would be stored, when or whether it would be destroyed, or whether it would transfer her biometric information to a third party for processing.

24. Ariel Davis never provided a written release to e.l.f. authorizing it to collect, store, or use her facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

25. Ariel Davis does not recall seeing any terms of service or privacy policy when using the Virtual Try-On tool, nor does she recall e.l.f. making such policies readily accessible so that she could review them prior to using the Virtual Try-On tool.

**Plaintiff Lacie Davis**

26. Lacie Davis is a citizen and a resident of Mason County, in the State of Illinois. While at her residence in Mason County, Illinois, Lacie Davis used the Virtual Try-On tool on e.l.f.'s website two to five times to try on various types of makeup, with her most recent use occurring between September and December 2021. Lacie Davis spent approximately one hour using the Virtual Try-On tool during this time.

27. Lacie Davis does not recall reviewing e.l.f.'s website terms and conditions and did not see any indication that her biometric information would be collected or distributed in e.l.f.'s website terms and conditions. Lacie Davis was also not informed by the Virtual Try-On tool that her use of the Try-On tool would result in e.l.f. to collecting her biometric information and identifiers.

28. Lacie Davis did not understand that e.l.f. would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool had she been aware of this fact.

29. E.l.f. never obtained, or attempted to obtain, Lacie Davis's informed, written consent to collect, transmit, store, or process her biometric information, nor did e.l.f. inform Lacie Davis about the length of time her biometric information would be stored, when or whether it

would be destroyed, or whether it would transfer her biometric information to a third party for processing.

30.     Lacie Davis never provided a written release to e.l.f. authorizing it to collect, store, or use her facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

31.     Lacie Davis does not recall seeing any terms of service or privacy policy when using the Virtual Try-On tool, nor does she recall e.l.f. making such policies readily accessible so that she could review them prior to using the Virtual Try-On tool.

***Plaintiff Taylor Davis***

32.     Taylor Davis is a citizen and a resident of Cook County, in the State of Illinois. While at her residence in Cook County, Illinois, Taylor Davis used the Virtual Try-On tool on e.l.f.'s website approximately five times to try on various types of makeup, with her most recent time occurring around January 2022. Taylor Davis spent approximately one hour using the Virtual Try-On tool during this time.

33.     Taylor Davis does not recall reviewing e.l.f.'s website terms and conditions and did not see any indication that her biometric information would be collected or distributed in e.l.f.'s website terms and conditions. Taylor Davis was also not informed by the Virtual Try-On tool that her use of the Try-On tool would result in e.l.f. collecting her biometric information and identifiers.

34.     Taylor Davis did not understand that e.l.f. would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool had she been aware of this fact.

35.     E.l.f. never obtained, or attempted to obtain, Taylor Davis's informed, written consent to collect, transmit, store, or process her biometric information, nor did e.l.f. inform Taylor Davis about the length of time her biometric information would be stored, when or whether it

would be destroyed, or whether it would transfer her biometric information to a third party for processing.

36.     Taylor Davis never provided a written release to e.l.f. authorizing it to collect, store, or use her facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

37.     Taylor Davis does not recall seeing any terms of service or privacy policy when using the Virtual Try-On tool, nor does she recall e.l.f. making such policies readily accessible so that she could review them prior to using the Virtual Try-On tool.

***Defendant***

38.     E.l.f. is a Delaware corporation, with its principal place of business at 570 10th Street, Oakland, CA 94607 USA.

39.     E.l.f. is one of the world's leading manufacturers and marketers of quality, cruelty-free skin care and makeup products. The company's products are sold on multiple continents and in many stores, including Walmart, Target, and Ulta Beauty.

40.     In 2021, e.l.f. had about $318.1 million in revenue.

## FACTUAL ALLEGATIONS

### A.     BIPA'S Legal Framework

41.     The Illinois General Assembly enacted BIPA to protect the privacy rights of every Illinois resident who has their unique, biometric identifiers captured or retained by self-interested, profit-obsessed companies.

42.     In enacting BIPA, the General Assembly found that the sensitivity of biometric information and identifiers warrants heightened protection because companies frequently collect it from individuals like Plaintiffs and the other Class members. Specifically, the General Assembly

found that "[b]iometrics are unlike other unique identifiers" like Social Security Numbers because they are "biologically unique to the individual" and cannot be changed if compromised. 740 Ill. Comp. Stat. 14/5(c).

43.     Thus, a person whose biometrics are compromised "has no recourse" and "is at heightened risk for identity theft." *Id*.

44.     When enacting BIPA, the General Assembly recognized that "[t]he full ramifications of biometric technology are not fully known." 740 Ill. Comp. Stat. 14/5(e). Therefore, "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 Ill. Comp. Stat. 14/5(f).

45.     BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 Ill. Comp. Stat. 14/10.

46.     "Biometric information" is identified as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers. *Id*.

47.     Accordingly, BIPA requires "private entities"—including companies like e.l.f.— that collect certain biometric identifiers or biometric information, or cause such information and identifiers to be collected, to take a number of specific steps to safeguard the biometric data they collect, store, or capture.

48.     Specifically, companies that collect the above-referenced biometric identifiers or biometric information, such as e.l.f., must obtain informed consent from consumers prior to

collecting such data from them, and they must publicly disclose to consumers their uses, retention

of, and schedule for destruction of the biometric information or identifiers that they do collect.

49.     With respect to safeguarding biometrics, BIPA requires that private entities—
including companies like e.l.f.—that possess biometric identifiers or biometric information must:

> [D]evelop a written policy, made available to the public, establishing a retention
> schedule and guidelines for permanently destroying biometric identifiers and
> biometric information when the initial purpose for collecting or obtaining such
> identifiers or information has been satisfied or within 3 years of the individual's
> last interaction with the private entity, whichever occurs first. Absent a valid
> warrant or subpoena issued by a court of competent jurisdiction, a private entity in
> possession of biometric identifiers or biometric information must comply with its
> established retention schedule and destruction guidelines.

*Id*. § 14/15(a).

50.     BIPA also requires that private entities in possession of biometric identifiers or

biometric information—including companies like e.l.f.—must safeguard such data "using the

reasonable standard of care within the private entity's industry" and must "store, transmit, and

protect from disclosure all biometric identifiers and biometric information in a manner that is the

same as or more protective than the manner in which the private entity stores, transmits, and

protects other confidential and sensitive information." *Id*. § 14/15(e).

51.     With respect to informed consent, BIPA provides:

> No private entity may collect, capture, purchase, receive through trade, or otherwise
> obtain a person's or a customer's biometric identifier or biometric information,
> unless it first:
>
> > (1) informs the subject or the subject's legally authorized
> > representative in writing that a biometric identifier or biometric
> > information is being collected or stored;
> >
> > (2) informs the subject or the subject's legally authorized
> > representative in writing of the specific purpose and length of term
> > for which a biometric identifier or biometric information is being
> > collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

*Id*. § 14/15(b).

52. BIPA further provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS § 14/l5(c).

53. BIPA further provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." *Id*. § 14/l1(c).

54. Under BIPA, private entities—including companies like e.l.f.—are prohibited from disclosing, redisclosing, or otherwise disseminating a consumer's biometric identifier or biometric information (or causing it to be done) unless the consumer has consented to such disclosure or redisclosure. *Id*. § 14/15(d).

55. BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id*. § 14/20. Where a violation is the result of a private entity's negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and, if the violation was intentional or reckless, BIPA provides for the greater of actual damages and liquidated damages of $5,000 per violation. *Id*.

**B. E.l.f. Collects Its Website Users' Biometric Information and Identifiers Through Its Virtual Try-On Tool**

56. Defendant e.l.f. operates its website (https://www.elfcosmetics.com) and markets and sells its products (including makeup and skincare products) through that website.

11

57.     E.l.f. markets and promotes makeup through its website, by allowing users and potential customers to use a tool called "Virtual Try-On," which permits users to try on makeup using a live video feed, uploaded picture, or model. Through its Virtual Try-On features, e.l.f. is collecting, capturing, possessing, or otherwise obtaining biometric information and identifiers from its online visitors.

58.     Visitors who enter elfcosmetics.com are able to use the site's Virtual Try-On features to try on various e.l.f. products. The process of using the Virtual Try-On tool is detailed below and is similar for all the Virtual Try-On features available on elfcosmetics.com.

59.     In order to virtually try on e.l.f. cosmetics, visitors of elfcosmetics.com may select the Virtual Try-On tool when viewing a particular product's page, an example of which appears below. Visitors may do so by clicking the "VIRTUAL TRY-ON" link located above the "ADD TO BAG" button.



*(Image captured from e.l.f.'s website on October 20, 2021.)*

60. Alternatively, visitors of elfcosmetics.com may use the Virtual Try-On tool by clicking on the "Virtual Try-On" link located in a dropdown menu on the homepage, under the banner heading "Best Sellers" and the subheading "Featured", as seen below. After clicking that link, visitors can select a product and use the Virtual Try-On tool by means of the method described in the preceding paragraph.



*(Image captured from e.l.f.'s website on June 17, 2022.)*

61. As of June 17, 2022, when a user clicks the "VIRTUAL TRY-ON" link on a product page for the first time, the user is presented with a pop-up notice that by proceeding to use the Virtual Try-On tool, the user agrees to e.l.f.'s Terms of Use and Privacy Notice. That pop-up does not appear again on subsequent occasions when the same web browser is used on the same device to activate e.l.f.'s Virtual Try-On tool.



*(Image captured from e.l.f.'s website on June 17, 2022.)*

62.     The above pop-up notice, see *supra* paragraph 61, does not inform visitors who use e.l.f.'s Virtual Try-On feature that their biometric information or identifiers will be collected, captured, possessed, or otherwise obtained if and when they use the feature. Nor does it inform those visitors that their biometric information will be stored, how long it will be stored, whether and when it will be destroyed, for what purposes it might be used, or whether it will be disclosed to third parties.

63.     When a user proceeds beyond this pop-up, see *supra* paragraph 61, and allows their image or live video to be captured, the user has not been asked or instructed to read e.l.f.'s Terms of Use or Privacy Notice, and the user has not affirmatively expressed informed consent (in writing or otherwise) to have their biometric information and identifiers collected, captured, possessed, or otherwise obtained by e.l.f., or to any other activities by e.l.f. in connection with their biometric information or identifiers.

64.     Although the popup notice referenced above, see *supra* paragraph 61, includes a link to a Privacy Notice, that Privacy Notice contains no mention of e.l.f.'s capture, use, collection, storage, or distribution of biometric information or identifiers.

65.     Likewise, although the popup notice referenced above, see *supra* paragraph 61, includes a link to the website's Terms of Use, as of June 17, 2022, those Terms of Use mention e.l.f.'s use of website visitors' biometric information only in the context of denying that e.l.f. collects, keeps, or discloses any biometric information or identifiers. Specifically, e.l.f.'s Terms of Use in effect as of June 17, 2022, reads in relevant part as follows:

> The e.l.f. Virtual Makeup Try-On Tool uses a photo or live camera feed to show a simulation of how a product may look on the user in the image. e.l.f. Cosmetics does not collect, keep, or disclose the photo, image, and/or video feed, or any data associated with them. e.l.f. Cosmetics does not collect, keep, or disclose any

14

biometric information or biometric data in connection with the e.l.f. Virtual Makeup Try-On Tool.

66.     This passage from e.l.f.'s Terms of Use page, see *supra* paragraph 65 (which website visitors are never instructed to read, but which are made available to them by means of a link) informs visitors who use the Virtual Try-On tool only that Virtual Try-On feature uses their photo or live camera feed to simulate how a product might appear on their face. The passage does not inform website visitors that the Virtual Try-On tool does so by scanning their faces, whether live or from the photo, and then using the biometric facial scan to place the product in the proper spot on the website visitor's face.  E.l.f.'s Terms of Use does not inform website visitors that their biometric facial scans will be captured, collected, obtained, or used by e.l.f.; or that their biometric information or identifiers will be saved and stored, or how long they will be stored, when they will be destroyed, how they may be used, or that their biometric identifiers and information could be disclosed to third parties.

67.     Prior to June 13, 2022, e.l.f.'s Terms of Use did not mention the Virtual Try-On Tool, photos, images, live video feed, biometric information, or biometric identifiers at all.  *See, e.g.*,       https://web.archive.org/web/20220517082400/https://www.elfcosmetics.com/terms-of-use/terms.html.

68.     Once users click the "Proceed" link in the pop-up notice, see *supra* paragraph 61, they are prompted to "choose try-on experience," which involves choosing to use the Virtual Try-On tool to test makeup either on the digital face of a model, on the user's face in an uploaded photo, or on the user's face as displayed in a live video feed using the camera on the user's computer or mobile device (the "live makeup" option).   A screenshot of the "choose try-on experience" page is shown below:



*(Image captured from e.l.f.'s website on June 17, 2022.)*

69.     If the user selects the "live makeup" option, the user's device informs the user that elfcosmetics.com wants to use the device's camera. If the user clicks "Allow," the Virtual Try-On tool will activate and the user may begin to try on makeup.



*(Image captured from e.l.f.'s website on October 20, 2021.)*

70.     Having gained access to the user's photo or live video feed, e.l.f. collects, captures, possesses, or otherwise obtains users' facial biometric information and identifiers as part of the Virtual Try-On process.

71.     E.l.f.'s Virtual Try-On feature employs advanced facial detection technology, as demonstrated by the feature's ability to focus and to move the image's positioning in real time along with each face that it detects.



*(Images captured from e.l.f.'s website on October 28, 2021.)*

72.     E.l.f. collects, captures, possesses, or otherwise obtains visitors' biometric data locally from the live feed or photo on the user's device.

73.     Other than through the links in the pop-up notice that appears the first time a given browser on a device is used to activate the Virtual Try-On tool, see *supra* paragraph 61, the only way for a user to access the Privacy Notice or the Terms of Use—neither of which informs users that their biometric information and identifiers and related data and information will be captured, collected, obtained, stored, and distributed—would be by scrolling to the very bottom of any elfcosmetics.com webpage and clicking one of several small links located there.



*(Image captured from e.l.f.'s website on June 17, 2022.)*

74.     In further contravention of BIPA, e.l.f. also does not have a publicly-available written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information obtained from its website users, including Plaintiffs and the other Class members.

75.     E.l.f. also has not destroyed consumers' biometric data within the timeframes established by BIPA.

76.     E.l.f. profited from consumers' biometric identifiers and biometric information by providing the Virtual Try-On feature to improve the customers' experience on e.l.f.'s website, and increase sales of its makeup products.

77.     Upon information and belief, e.l.f.'s sales of makeup products increased as a result of the inclusion of the Virtual Try-On feature on e.l.f's website, and requisite facial scans generated by the Virtual Try-On feature.

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this action as a class action pursuant to Rules 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

All persons whose biometric identifiers were captured by e.l.f. through use of the Virtual Try-On tool on e.l.f.'s websites while residing in Illinois from four years preceding the date of the filing of this action to the present.

79. Excluded from the Class are e.l.f. and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

80. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

81. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The proposed Class is sufficiently numerous that individual joinder of all Class members is impracticable. While Plaintiffs believe that there are approximately 258,000 Class members, the precise number of Class members is presently unknown to Plaintiffs, but may be ascertained from e.l.f.'s books, records, and electronically stored information. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

82. **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

    a.    Whether e.l.f. qualifies as a "private entity" as defined by 740 Ill. Comp. Stat. 14/10;

    b.    Whether e.l.f. captures, collects, stores, or distributes information that qualifies as "biometric information" or "biometric identifiers" of users of the Virtual Try-On tool on e.l.f.'s website, as defined by 740 Ill. Comp. Stat. 14/10 and 740 Ill. Comp. Stat. 14/15, *et seq*.;

    c.    Whether e.l.f. developed, made publicly available, or complied with a written policy establishing a retention schedule and guidelines for

destroying its Virtual Try-On tool users' biometric information and biometric identifiers, as 740 Ill. Comp. Stat. 14/15(a) requires;

d.      Whether e.l.f. obtained an executed written release from each user of e.l.f.'s Virtual Try-On tool before capturing their biometric information and biometric identifiers, as 740 Ill. Comp. Stat. 14/15(b) requires;

e.      Whether e.l.f., previously or on an ongoing basis, collected, captured, purchased, received through trade, or otherwise obtained its website users' biometric identifiers or biometric information through its Virtual Try-On tool on its website, in violation of 740 Ill. Comp. Stat. 14, *et seq.*;

f.      Whether e.l.f. sold, leased, traded, or otherwise profited from Virtual Try-On feature users' biometric identifiers or biometric information;

g.      Whether e.l.f.'s conduct was and is willful, reckless, or negligent;

h.      The appropriate measure of damages to award Plaintiff and the other Class members; and

i.      The appropriate injunctive relief to which Plaintiff and the other Class members are entitled.

83.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and each of the other Class members used the same Virtual Try-On tool on e.l.f.'s website, through which e.l.f. collected, captured, purchased, received through trade, or otherwise obtained their biometric identifiers or biometric information, and did not inform Plaintiffs or the other Class members of such collection, capture, purchase, receiving through trade, or otherwise obtaining of such biometric identifiers or biometric information, and did not obtain written consent for this same capture, collection, purchase, receiving through trade, or otherwise obtaining of biometric information or biometric identifiers from Plaintiffs or the other Class members.

84.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members whom they seek to represent, Plaintiffs have retained counsel

competent and experienced in complex class action litigation (including successfully litigating class action cases similar to this one, where a defendant breached statutory privacy obligations), and Plaintiffs intend to vigorously prosecute this action. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

85.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** E.l.f. acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below.

86.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Violation of 740 Ill. Comp. Stat. 14/15(b)**
**(Failure to Inform in Writing and Obtain Written Release from Users Prior to Capturing, Collecting, or Storing Biometric Identifiers)**

87.     Plaintiffs reassert, reallege, and incorporate by reference each of the allegations contained in Paragraphs 1 through 86 (above), as though asserted and alleged herein.

88.     Plaintiffs bring this claim individually and on behalf of the other Class members.

89.     Defendant's Virtual Try-On technology captured—and continues to capture—Plaintiffs' and the other Class members' biometric identifiers, including facial geometry information.

90.     Facial geometry is a biometric identifier protected by BIPA.

91.     BIPA prohibits private entities like e.l.f. from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining website users' biometric identifiers or biometric information without first informing them in writing of such activities; informing them in writing of the specific purpose and length of term for which biometric identifiers or biometric information are being collected, stored, and used; and obtaining a written release executed by the website's users whose biometric identifiers or biometric information is being collected.

92.     E.l.f. does not inform its customers in writing that their biometric information and biometric identifiers will be collected through the use of the Virtual Try-On tool; does not inform them in writing of the specific purpose and length of time that their biometric information and biometric identifiers will be collected, stored, and used; and does not obtain written consent from its customers affirming that, by using e.l.f.'s Virtual Try-On tool, their biometric information and biometric identifiers will be collected.

93.     Upon information and belief, e.l.f. is continuing to collect, capture, and store biometric information and biometric identifiers of its website's users, without the specific permission required by BIPA.

94.     Plaintiffs and the other Class members have been injured by e.l.f.'s conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to e.l.f.'s collection, capture, and storage of their

biometric information and biometric identifiers, and the sharing of that data with third parties; accordingly, the imposition of statutory damages under BIPA is appropriate here.

### SECOND CAUSE OF ACTION
**Violation of 740 Ill. Comp. Stat. 14/15(a)**
**(Failure to Develop and Make Publicly Available a Written Policy for Retention and Destruction of Biometric Identifiers)**
**Damages and Injunctive Relief**

95.     Plaintiffs reassert, reallege, and incorporate by reference each of the allegations contained in Paragraphs 1 through 86 (above), as though asserted and alleged herein.

96.     Plaintiffs bring this claim individually and on behalf of the other Class members.

97.     Defendant's Virtual Try-On tool operates by capturing the biometric identifiers, including the facial geometry, of users of e.l.f.'s Virtual Try-On tool, including Plaintiffs and the other Class members.

98.     Facial geometry is a biometric identifier or biometric information, protected by BIPA.

99.     BIPA requires private entities, like e.l.f., in possession of biometric identifiers or biometric information to develop and comply with a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first.

100.     E.l.f. did not develop, possess, comply with, or publish to its website users—including Plaintiffs and the other Class members—such a written policy at any time while it has been capturing, collecting, or storing Plaintiffs' and the other Class members' biometric

information or biometric identifiers (which e.l.f. caused to be obtained through their use of the Virtual Try-On tool on e.l.f.'s website).

101.    As a result, e.l.f. denied Plaintiffs and the other Class members their rights under BIPA to be made aware of e.l.f.'s retention and destruction policies as to their biometric identifiers and information, and to have e.l.f comply with BIPA's retention and destruction requirements. Additionally, e.l.f.'s failure to develop and follow the required retention and destruction policies placed Plaintiffs' and the other Class members' sensitive biometric identifiers at risk of compromise or illicit use by e.l.f. and others.

102.    Plaintiffs and the other Class members have been injured by e.l.f.'s conduct, as alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to e.l.f.'s collection, capture, and storage of their biometric information and biometric identifiers, and its potential sharing of that data with foreign companies; accordingly, the imposition of statutory damages under BIPA is appropriate here.

103.    Moreover, an injunction is warranted pursuant to 740 Ill. Comp. Stat. 14/20(4), requiring e.l.f. to develop a written policy, and inform Plaintiffs and the other Class members of that policy, after ensuring that their information is destroyed.

### THIRD CAUSE OF ACTION
### VIOLATION OF 740 ILCS 14/15(c)
### Prohibition Against Selling, Leasing, Trading, Or Otherwise Profiting From A Person's Biometric Identifiers Or Biometric Information
### Damages and Injunctive Relief

104.    Plaintiffs reassert, reallege, and incorporate by reference each of the allegations contained in Paragraphs 1 through 86 (above), as though asserted and alleged herein.

105.    Plaintiffs bring this claim individually and on behalf of the other Class members.

106.    E.l.f., through the Virtual Try-On feature, collected, captured, or otherwise obtained Plaintiffs' and other Class members' biometric identifiers, including facial geometry.

107.    Facial geometry is a biometric identifier protected by BIPA.

108.    E.l.f. was, and currently still is, in possession of the biometric identifiers and biometric information collected, captured, or otherwise obtained by e.l.f. through the use of its Virtual Try-On feature.

109.    BIPA prohibits private entities, like e.l.f., in possession of biometric identifiers or biometric information from selling, leasing, trading, or otherwise profiting from those biometric identifiers or biometric information.

110.    E.l.f. provides the Virtual Try-On feature on its website in order to increase online sales of its makeup products.

111.    E.l.f. provides the Virtual Try-On feature on its website as a way for potential customers to try e.l.f.'s makeup on before they buy it.

112.    E.l.f.'s potential customers are more likely to buy e.l.f.'s makeup products, if they can see what the products would look like on them first.

113.    It is the facial geometry scans collected, captured, or otherwise obtained by e.l.f. through use of e.l.f.'s Virtual Try-On feature that allow for the proper placement of the makeup products on website users' faces, so the users can see how e.l.f.'s makeup products look on them when worn.

114.    Upon information and belief, e.l.f.'s makeup sales have increased since e.l.f. began offering the Virtual Try-On feature on its website.

115. As a result, e.l.f. violated BIPA by unlawfully selling, leasing, trading, or otherwise profiting from individuals' biometric identifiers and biometric information, including the biometric identifiers and information of Plaintiffs and the other Class members.

116. Plaintiffs and the other Class members have been injured by e.l.f.'s conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, violations of their privacy due to e.l.f.'s's collection, capture, and storage of their biometric identifiers and biometric information, and violation of their rights in and ownership of their unique biometric identifiers and biometric information through e.l.f.'s's profiting from the same; accordingly the imposition of statutory damages under BIPA is appropriate here.

117. Moreover, an injunction is warranted pursuant to 740 Ill. Comp. Stat. § 14/20(4), requiring e.l.f. to stop selling, leasing, trading, or otherwise profiting from Plaintiffs' and the other Class members' biometric identifiers or biometric information.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter an order granting the following relief:

a. Finding that this action satisfies the requirements for maintenance as a class action as set forth in Rule 23 of the Federal Rules of Civil Procedure and certifying the class defined herein;

b. Appointing Plaintiffs as representatives of the Class and their undersigned counsel as class counsel;

c. Entering judgment in favor of Plaintiffs and the other Class members and against e.l.f.;

d.      Awarding Plaintiffs and the other Class members liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each of e.l.f.'s BIPA violations;

e.      Issuing an injunction ordering e.l.f. to comply with BIPA and to disclose to Plaintiffs and the other Class members whether e.l.f. possesses their biometric identifiers or biometric information; e.l.f.'s uses of their biometric information or biometric identifiers; and e.l.f.'s retention and destruction policies regarding their biometric information or biometric identifiers;

f.      Issuing an injunction ordering e.l.f. to comply with BIPA by preparing, producing, or adopting a publicly published retention and destruction policy for the biometric information or biometric identifiers that it collects;

g.      Issuing an injunction ordering e.l.f. to comply with BIPA going forward by stopping selling, leasing, trading, or otherwise profiting from Plaintiffs' and the other Class members' biometric identifiers or biometric information;

h.      Awarding reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as provided for in 740 Ill. Comp. Stat. 14/20; and

i.      Granting such other and further relief as the Court deems appropriate.

## **JURY TRIAL REQUESTED**

Plaintiffs, individually and on behalf of the other Class members, request a trial by jury on all claims so triable.

Dated: September 16, 2022               Respectfully submitted,

                                */s/ Nada Djordjevic*
                                ADAM J. LEVITT
                                alevitt@dicellolevitt.com

AMY E. KELLER
akeller@dicellolevitt.com
NADA DJORDJEVIC
ndjordjevic@dicellolevitt.com
SHARON CRUZ
scruz@dicellolevitt.com
**DiCELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

STEVEN M. NATHAN*
snathan@hausfeld.com
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, New York 10004
Telephone: (646) 357-1100

JAMES J. PIZZIRUSSO*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 540-7200

Don Bivens*
don@donbivens.com
**DON BIVENS PLLC**
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

***Counsel for Plaintiffs and the Proposed Class***

*\*Pro Hac Vice Admission Applications Forthcoming*