**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARIEL DAVIS, LACIE DAVIS, and TAYLOR DAVIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No.  1:22-cv-05069 |
| | ) | |
| v. | ) | Hon. Martha M. Pacold |
| | ) | |
| e.l.f. COSMETICS, INC., | ) | Magistrate Sheila M. Finnegan |
| | ) | |
| Defendant. | | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
**IN FAVOR OF ARBITRATION, OR IN THE ALTERNATIVE,**
**FOR FAILURE TO STATE A CLAIM**

Matthew C. Wolfe
Erin Bolan Hines
Yara K. Rashad
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel: (312) 704-7700
mwolfe@shb.com
ehines@shb.com
yrashad@shb.com

***Attorneys for Defendant***
***e.l.f. Cosmetics, Inc.***

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ........................................................................................1

THE CLASS ACTION COMPLAINT ...........................................................2

LEGAL STANDARD...................................................................................2

ARGUMENT ...............................................................................................3

    I.    Plaintiffs' Claims Should Be Dismissed In Favor Of Arbitration. ..........................3

        A.    Plaintiffs Entered into a Valid Agreement to Arbitrate. .............................5

        B.    This Litigation Is Subject to the Arbitration Clauses...................................7

        C.    Even if a Previous Version of the Terms of Use Applies, This Litigation Is Subject to the Arbitration Clauses............................................9

    II.    In the Alternative, Plaintiffs Fail To State A Claim Under BIPA. ........................10

        A.    Plaintiffs Have Not Met Their Pleading Burden Under Rule 8. ...............10

            1.    Plaintiffs do not allege that e.l.f. uses, or can use, "biometric identifiers" or "biometric information" to identify them. ...................................................................11

            2.    Plaintiffs allege only facial detection done locally on their own device, which is not an allegation that e.l.f. collected or possessed "biometric identifiers" or "biometric information."................................................................13

        B.    Plaintiffs' Section 15(a) Claims Also Must be Dismissed As Not Ripe.......................................................................................15

    III.    Plaintiffs Fail To State A Claim For Heightened Damages...................................16

CONCLUSION............................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Acaley v. Vimeo, Inc.*,
464 F. Supp. 3d 959 (N.D. Ill. 2020) ...................................................................6, 7

*Anand v. Heath*,
2019 WL 2716213 (N.D. Ill. June 28, 2019) ..........................................................6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................3, 10

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ...................................................................................3

*Daichendt v. CVS Pharmacy, Inc.*,
No. 22-cv-3310 (N.D. Ill. Dec. 2, 2022)...........................................................11, 12

*Faulkenberg v. CB Tax Franchise Sys., LP*,
637 F.3d 801 (7th Cir. 2011) ...........................................................................2, 3, 5, 8

*Fjeta v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)......................................................................6

*Forby v. One Techs.*,
LP, 2016 WL 11746078 (S.D. Ill. Mar. 25, 2016)..................................................6

*Gore v. Alltel Commc'ns, LLC*,
666 F.3d 1027 (7th Cir. 2012) ..............................................................................5, 8

*Gorny v. Wayfair Inc.*,
2019 WL 2409595 (N.D. Ill. June 7, 2019).........................................................6, 7

*Haber v. Biomet, Inc.*,
578 F.3d 553 (7th Cir. 2009) ...................................................................................3

*Harvey v. Resurrection Univ.*,
2022 WL 3716213 (N.D. Ill. Aug. 29, 2022) .......................................................14

*Hazlitt v. Apple Inc.*,
543 F. Supp. 3d 643 (S.D. Ill. 2021).....................................................................14

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ...............................................................10, 14

*Heard v. Becton, Dickinson & Co.*,
    524 F. Supp. 3d 831 (N.D. Ill. 2021) ................................................................14, 15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .......................................................................................9, 14

*Horn v. Method Prod., PBC*,
    2022 WL 1090887 (N.D. Ill. Apr. 12, 2022) ...........................................................16

*Jacobs v. Hanwha Techwin Am., Inc.*,
    2021 WL 3172967 (N.D. Ill. July 27, 2021) ...........................................................14

*Johnson v. Uber Techs., Inc.*,
    2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) .......................................................6, 7

*King v. PeopleNet Corp.*,
    2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) ...........................................................14

*Kislov v. Am. Airlines, Inc.*,
    566 F. Supp. 3d 909 (N.D. Ill. 2021) ......................................................................16

*Kukovec v. Estee Lauder Companies, Inc.*,
    2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) ..........................................................16

*Meyer v. Uber Technologies, Inc.*,
    868 F.3d 66 (2d Cir. 2017) ........................................................................................7

*Monroy v. Shutterfly, Inc.*,
    2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) .........................................................11

*Patterson v. Respondus, Inc.*,
    2022 WL 860946 (N.D. Ill. Mar. 23, 2022) ...........................................................14

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................................................................11

*Scan Top Enter. Co., Ltd. v. Winplus N.A., Inc.*,
    2016 WL 910502 (N.D. Ill. Mar. 9, 2016) ................................................................5

*Starkey v. G Adventures, Inc.*,
    796 F.3d 193 (2d Cir. 2015) ......................................................................................7

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
    2022 WL 3139507 (S.D. Ill. Aug. 5, 2022) ............................................................15

*Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*,
    1 F.3d 639 (7th Cir. 1993) .........................................................................................8

iii

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................................7

*Thornley v. Clearview AI, Inc.*,
  984 F.3d 1241 (7th Cir. 2021) ..........................................................................14

*Treiber & Straub, Inc. v. U.P.S., Inc.*,
  474 F.3d 379 (7th Cir. 2007) ..............................................................................6

*Trio v. Turing Video, Inc.*,
  2022 WL 4466050 (N.D. Ill. Sept. 26, 2022) ....................................................11

**STATE: CASES**

*Hubbert v. Dell Corp.*,
  835 N.E.2d 113 (Ill. App. Ct. 2005) ............................................................5, 6, 7

*McDonald v. Symphony Bronzeville Park, LLC*,
  193 N.E.3d 1253 (2022) ....................................................................................12

*Nationstar Mortgage LLC v. Benavides*,
  2020 IL App (2d) 190681 ..................................................................................13

*Rosenbach v. Six Flags Ent. Corp.*,
  129 N.E.3d 1197 (2019) ....................................................................................11

*W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*,
  183 N.E.3d 47 (2021) ........................................................................................12

**FEDERAL: STATUTES**

9 U.S.C. § 2 ..........................................................................................................4, 9

9 U.S.C. § 4 ..........................................................................................................2, 3

**FEDERAL: RULES**

Fed. R. Civ. P. 8 ................................................................................................10, 15

Fed. R. Civ. P. 12(b)(3) ..................................................................................2, 3, 10

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 3, 10

**STATE: OTHER**

Ill. Att'y Gen. Pub. Acc. Op. No. 14-008, issued August 19, 2014 ........................13

No. Public Access 17-011, 2017 WL 10084298 (Ill. A.G. Aug. 14, 2017) ..............13

STATE: STATUTES

740 ILCS 14/10 ...........................................................................................................11

740 ILCS 14/15 .................................................................................................. passim

740 ILCS 14/20 ...........................................................................................................16

OTHER AUTHORITIES

*Biometrics*, MERRIAM-WEBSTER, https://www.merriam-
webster.com/dictionary/biometrics (Oct. 28, 2022) ................................................13

*Detect*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/detect
(Nov. 9 2022) ............................................................................................................12

*Identify*, Black's Law Dictionary (11th ed. 2019) ........................................................13

MERRIAM-WEBSTER, https://www.merriam-webster.com (2022) ..................................13

## **INTRODUCTION**

e.l.f. Cosmetics, Inc. ("e.l.f.") is a beauty company that offers inclusive, accessible, clean, and cruelty-free cosmetics and skincare products. e.l.f.'s products are available for purchase at leading retailers such as Walmart, Target, and Ulta Beauty. Consumers can also purchase e.l.f. products on e.l.f.'s website, which provides access to a tool (the "Virtual Try-On" tool) that gives users the ability to try-on makeup virtually prior to purchase. To access the Virtual Try-On tool, consumers must first agree to the terms and conditions on e.l.f.'s website, which notifies users that e.l.f. does not "collect, keep, or disclose any biometric information or biometric data" with the Virtual Try-On tool, and which includes an agreement to arbitrate all claims arising out of their use of the Virtual Try-On tool. Plaintiffs have filed this putative class action against e.l.f., alleging violations of the Illinois Biometric Information Privacy Act ("BIPA") based on their repeated and voluntary use of the Virtual Try-On tool accessed via e.l.f.'s website.

Plaintiffs' claims belong in arbitration, not federal court. Plaintiffs agreed to an arbitration provision that encompasses the claims set forth in this litigation, and, to the extent there is any doubt, reserves questions of arbitrability to an arbitrator. As such, Plaintiffs' claims must be dismissed and resolved in arbitration.

Alternatively, though the Court need not reach the issue, Plaintiffs' Complaint also fails to state a BIPA claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have not pled their claims with sufficient specificity to satisfy Rule 8(a). And, leave to amend would be futile, because Plaintiffs' alleged use of the Virtual Try-On tool, accessed via e.l.f.'s website, did not, and could not, result in e.l.f. possessing or obtaining any data regulated by BIPA. Additionally, Plaintiffs' conclusory statements do not suffice to state a claim for heightened damages, and therefore, such claims should be dismissed.

## THE CLASS ACTION COMPLAINT

Plaintiffs Ariel Davis, Lacie Davis, and Taylor Davis filed this putative class action Complaint against e.l.f. alleging violations of BIPA. All of Plaintiffs' claims arise out of their voluntary use of the Virtual Try-On tool accessed via e.l.f.'s website. Specifically, Plaintiffs claim that e.l.f. violated BIPA Section 15(a) by failing to establish a publicly available written retention and destruction policy regarding its collection of "biometric information" via the Virtual Try-On tool. *Id.* ¶¶ 95–103. Additionally, Plaintiffs allege that e.l.f. violated Section 15(b) of BIPA by failing to obtain their consent before the Virtual Try-On tool collected their "biometrics." *Id.* ¶¶ 87–94. Finally, Plaintiffs allege that e.l.f. violated BIPA Section 15(c) by profiting from biometric identifiers or information obtained through the Virtual Try-On tool. *Id.* ¶¶ 104–117.

Importantly, Plaintiffs' Complaint expressly acknowledges that the Virtual Try-On tool contains pop-up Terms of Use containing an arbitration clause and class action waiver. Plaintiffs do not deny that they were subject to e.l.f.'s Terms of Use; they simply state that they do not remember seeing them. Additionally, the Complaint does not contain any factual support for Plaintiffs' contention that the Virtual Try-On tool collects information that can be used to identify them and Plaintiffs never allege how e.l.f. could ever gain access to such information—which lives only on their personal devices.

## LEGAL STANDARD

e.l.f. brings its motion to compel arbitration, seeking dismissal, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. In the Seventh Circuit, when a motion to dismiss is brought to enforce an arbitration provision in a contract, that motion is properly brought under Federal Rule of Civil Procedure 12(b)(3) for improper venue.[1] *See, e.g., Faulkenberg v. CB Tax Franchise Sys.,*

---

[1] While, in some contexts, a motion arguing that the appropriate venue is arbitration should be styled as a motion to compel arbitration, that is not appropriate where, as here, the place of

*LP*, 637 F.3d 801, 808 (7th Cir. 2011). When considering a motion to dismiss brought under Rule 12(b)(3), the Court is not "obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment if the parties submit evidence outside the pleadings." *Faulkenberg*, 637 F.3d at 809–10 (internal quotations omitted). Rather, the Court may consider evidence submitted by the parties. *Id.*

As to the Rule 12(b)(6) portion of this motion, to satisfy her pleading burden, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Crucially, a plaintiff cannot satisfy *Twombly* by "merely parrot[ing] statutory language of the claims that [she is] pleading . . . rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## ARGUMENT

### I. Plaintiffs' Claims Should Be Dismissed In Favor Of Arbitration.

In their Complaint, Plaintiffs claim they accessed e.l.f.'s website and used the Virtual Try-On tool to try-on various types of makeup on multiple occasions. Compl. ¶¶ 20, 26, 32. Per the Complaint, prior to accessing the Virtual Try-On tool, all users are presented with a pop-up notice, which informs users that, by proceeding to the Virtual Try-on tool, the user agrees to e.l.f.'s Terms of Use. Compl. ¶¶ 61-68. To use the Virtual Try-On tool, Plaintiffs were required to accept e.l.f.'s Terms of Use, which contain the following first paragraph in upper case, bold, highlighted print regarding mandatory, binding, individual arbitration:

**THESE TERMS OF USE CONTAIN A CLASS ACTION WAIVER AS WELL AS AN ARBITRATION PROVISION, WHICH REQUIRES YOU TO ARBITRATE ANY CLAIMS (WITH CERTAIN EXCEPTIONS) YOU MAY HAVE AGAINST E.L.F. COSMETICS, INC. AND ITS AFFILIATES ON AN INDIVIDUAL BASIS. ARBITRATION ON AN INDIVIDUAL BASIS**

---

arbitration identified in a contract is outside of the district where the motion is filed. *See Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) (citing 9 U.S.C. § 4).

**MEANS THAT YOU WILL NOT HAVE, AND THAT YOU WAIVE, THE RIGHT FOR A JUDGE OR JURY TO DECIDE YOUR CLAIMS, AND THAT YOU MAY NOT PROCEED IN A CLASS, CONSOLIDATED, OR REPRESENTATIVE CAPACITY IN ANY FORUM, AS DESCRIBED IN MORE DETAIL BELOW. YOU HAVE THE RIGHT TO OPT OUT OF ARBITRATION AND/OR THE CLASS ACTION WAIVER, AS EXPLAINED BELOW.**

Exhibit A, Rungsarangnont Decl. ¶¶ 13-14 & Ex. 1.

In Section XVI of the Terms of Use, users are presented with the following provision:

Mindful of the high cost of legal disputes, not only in dollars but in time and energy, both you and e.l.f. Cosmetics agree that any and all disputes, actions, claims, or other controversies concerning or arising in any way out of your use (or lack of use) of, access (or lack of access) to, or a purchase from, the Website, the App, or any desktop or mobile application; the e.l.f. Virtual Makeup Try-On Tool; these Terms of Use; any product or service; and any advertising, promotion, or other communications between you and e.l.f. Cosmetics (collectively, a "Dispute"), whether based in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis, shall be resolved exclusively through final and binding individual arbitration. "Dispute" will be given the broadest possible meaning allowable under law.

This agreement to arbitrate covers and includes threshold questions of arbitrability. The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any and all disputes arising out of or relating to the formation, existence, scope, validity, interpretation, applicability, or enforceability of this agreement to arbitrate, or any part of it, or of these Terms of Use, including, but not limited to, any claim that all or any part of this agreement to arbitrate or the Terms of Use is void or voidable. If any party disagrees about whether the foregoing provision (or any portion of this agreement to arbitrate, including without limitation the provisions relating to arbitration) can be enforced or whether it applies to the dispute, the parties agree that the arbitrator will decide that dispute. Notwithstanding the foregoing, however, the parties agree that any issue concerning the validity of the class action waiver below must be decided by a court, and an arbitrator does not have authority to consider the validity of the class action waiver. Both you and e.l.f. Cosmetics understand and agree that we are waiving our right to sue or go to court to assert or defend our rights, except as set forth below.

Rungsarangnont Decl. ¶¶ 13-14 & Ex. 1.

The Federal Arbitration Act ("FAA") provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA's "principal purpose . . . is to ensur[e] that private

arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (alterations omitted). To determine whether an arbitration provision applies, federal courts apply state law principles of contract formation. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012); *Faulkenberg*, 637 F.3d at 809; *Scan Top*, 2016 WL 910502, at *3. Once it is clear "that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore*, 666 F.3d at 1032. As discussed next, Plaintiffs: (1) entered into a contract containing an arbitration provision, which (2) applies to all of the claims in this litigation. That should end this matter.

### A. Plaintiffs Entered into a Valid Agreement to Arbitrate.

At all times since e.l.f. began providing access to the Virtual Try-On tool in mid-2019, its Terms of Use have contained a valid, binding arbitration clause. Accordingly, Plaintiffs agreed to arbitrate.

Per their own allegations in the Complaint, when Plaintiffs clicked on the Virtual Try-On link on a product page for the first time, they would have seen the pop-up Terms of Use Notice. Compl. ¶¶ 61-68. That Notice stated: "By clicking 'Proceed,' you agree to e.l.f.'s Terms of Use and Privacy Notice, including e.l.f.'s Notice of Financial Incentive." Importantly (and not readily apparent from the screenshot used in the Complaint), the "Terms of Use" is hyperlinked on every page of e.l.f.'s website. Rungsarangnont Decl. ¶¶ 10-11; *see also* Compl. ¶ 61. The "Terms of Service" hyperlink takes users to the "Website Terms of Use." *Id.*

Thus, the Terms of Use are presented in classic "clickwrap" fashion, and Illinois courts have held that hyperlinks to terms and conditions are sufficient to form a "clickwrap" contract. *See Hubbert v. Dell Corp.*, 835 N.E.2d 113 (Ill. App. Ct. 2005) (finding customer agreed to terms and conditions when making an online purchase because each webpage in the process contained a

hyperlink labeled "Terms and Conditions of Sale," and all online forms stated that "All sales are subject to Dell's Term[s] and Conditions of Sale."). Where statements "would place a reasonable person on notice that there were terms and conditions attached to the purchase," the customer agrees to those terms by completing the transaction. *Id*; *see also Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 966 (N.D. Ill. 2020) (finding BIPA plaintiff received reasonable notice when "he initially opened the app and viewed its welcome page, where, as indicated, the following statement appeared: "By continuing I agree to the terms."); *Gorny v. Wayfair Inc.*, 2019 WL 2409595, at \*5-6 (N.D. Ill. June 7, 2019) (holding that customer agreed to terms and conditions when making purchase because plaintiff used website forms that "expressly notified the buyer of the existence of terms that would govern the purchase" and plaintiff's complaints "that he did not actually read the terms are of no consequence"); *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at \*3-4 (N.D. Ill. Sept. 20, 2018) (finding contract formed where account creation website stated: "By creating an Uber account, you agree to the Terms of Service & Privacy Policy").

Courts will especially enforce contracts created by hyperlinked terms and conditions where, as here, there is language expressly linking a users' affirmative action to the manifestation of assent. *See Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 382 (7th Cir. 2007) (enforcing contract where user agreed to website's terms and conditions by clicking on a box on the screen) *Anand v. Heath*, 2019 WL 2716213, at \*5 (N.D. Ill. June 28, 2019) (citing cases enforcing contracts where website expressly linked users' action to the manifestation of assent); *Forby v. One Techs.*, LP, 2016 WL 11746078, at \*7 (S.D. Ill. Mar. 25, 2016) (finding that plaintiff was "informed of the consequences of [her] assenting click and [s]he was shown, immediately [above], where to click to understand those consequences."); *Fjeta v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012) (finding plaintiff "was informed of the consequences of his assenting click"

6

where language read "[b]y clicking Sign Up, you are indicating that you have read and agree to the Terms of Service"); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 71 (2d Cir. 2017) (holding valid contract formed where text explained that "[b]y creating an Uber account, you agree . . . ."); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 195 (2d Cir. 2015) (upholding validity of contract where text explained that "[c]onfirmation of your reservation means that you have . . . agreed . . ." and that "[b]y booking a trip, you agree . . ."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) (finding contract where text explained that "[b]y proceeding, you . . . are agreeing . . .")).

Against this settled law, Plaintiffs allege only that they don't remember reviewing the Terms of Use.  Compl. ¶¶ 21, 25, 27, 31, 33, 37.  That is "of no consequence." *See Gorny*, 2019 WL 2409595 at *6. Courts in this district repeatedly have held that a contract of individual arbitration can be formed through a hyperlink to terms and conditions when the hyperlink is clearly displayed, regardless of whether the hyperlinked document is accessed and read. *Johnson*, 2018 WL 4503938, at *3–4 (binding contract to individually arbitrate claims created under *Hubbert* in same circumstances); *Acaley*, 464 F. Supp. 3d at 966 (binding individual arbitration agreement created with consumer bringing BIPA claims based on hyperlink to terms and conditions).

In summary, e.l.f.'s hyperlinked Terms of Use are sufficient to create a valid contract containing an arbitration agreement. Furthermore, by Plaintiffs' own admissions, e.l.f.'s website contains language expressly linking an action by the user (clicking "proceed") to the manifestation of assent (agreeing to e.l.f.'s Terms of Use).  Compl. ¶ 61.  Accordingly, Plaintiffs' acceptance of the Terms of Use constitutes a valid agreement to arbitrate.

**B.  This Litigation Is Subject to the Arbitration Clauses.**

The arbitration clause provides that "any and all disputes, actions, claims, or other controversies concerning or arising in any way out of your use (or lack of use) of, access (or lack

of access) to, or a purchase from, the Website, the App, or any desktop or mobile application; the e.l.f. Virtual Makeup Try-On Tool; these Terms of Use; any product or service; and any advertising, promotion, or other communications between you and e.l.f. Cosmetics (collectively, a 'Dispute'), whether based in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis, shall be resolved exclusively through final and binding individual arbitration. 'Dispute' will be given the broadest possible meaning allowable under law." Rungsarangnont Decl. at Ex. 1. *See also WEBSITE TERMS OF USE*, E.L.F. COSMETICS, https://www.elfcosmetics.com/terms-of-use/terms.html (June 13, 2022).

Not only does the arbitration clause specifically reference and incorporate the applicability of mandatory arbitration to claims arising in any way out of using the Virtual Try-On tool—the very website functionality Plaintiffs complain about—it encompasses "any and all disputes, actions, claims, or other controversies concerning or *arising in any way out of* [one's] use of" e.l.f.'s website. *Id.* (emphasis added). Arbitration agreements that contain broad coverage for claims "arising out of" contract terms or usage of services must be interpreted broadly. *See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) ("In fact, any dispute between contracting parties that is in any way connected with their contract could be said to "arise out of" their agreement and thus be subject to arbitration under a provision employing this language."). This broad provision must be read to cover all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract *per se*. *Gore*, 666 F.3d at 1033; *see also Faulkenberg*, 637 F.3d at 810–11 ("Arbitration clauses containing language such as "arising out of" are "extremely broad" and "necessarily create a presumption of arbitrability."). The present litigation—which asserts that e.l.f. violated Plaintiffs' privacy rights by, *inter alia*, collecting Plaintiffs' and other Class members' biometric information or identifiers

*through its Virtual Try-On Tool*—undoubtedly "arises out of" or "relates" to "the e.l.f. Virtual Makeup Try-On Tool," which is expressly referenced in the arbitration clause. Accordingly, arbitration is the only proper venue for this litigation, and the litigation should be dismissed.

Moreover, even if there were some reasonable dispute about the applicability and enforceability of the parties' agreement to the arbitration clause in this litigation, that dispute would be for the arbitrator, not this Court, to resolve. The arbitration clause provides for arbitration "in accordance with [] the Federal Arbitration Act and other applicable federal law." Rungsarangnont Decl. at Ex. 1. The Federal Arbitration Act allows parties to agree via contract that an arbitrator will resolve threshold arbitrability questions. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). When presented with a delegation of arbitrability disputes, federal courts *must* allow an arbitrator to make the decision. *Id.* at 530–31.

### C. Even if a Previous Version of the Terms of Use Applies, This Litigation Is Subject to the Arbitration Clauses.

Finally, Plaintiffs mention, in a single paragraph, the existence of a previous version of the Terms of Use. Compl. ¶ 67. (e.l.f. routinely updates its Terms of Use to reflect its evolving business and changes in the law.) Although all allegations contained in the Complaint refer to the current, and most up to date, version of the Terms of Use found on e.l.f.'s website, *see* Compl. ¶¶ 61, 63, 65, 66, 73, to the extent Plaintiffs are suggesting that a previous version of the Terms of Use apply to their claims, their argument still fails because the previous version referenced in Plaintiffs' Complaint was conspicuously placed and hyperlinked on every page of e.l.f.'s website and contained a materially identical arbitration provision and class action waiver. Rungsarangnont Decl. ¶¶ 15-16 & Ex. 2. Accordingly, Virtual Try-On users, under any relevant version of the website and the Terms of Use, would have agreed to arbitrate.

## II.  In the Alternative, Plaintiffs Fail To State A Claim Under BIPA.

Although the Court need not address the following arguments, in the alternative to dismissal under Rule 12(b)(3), Plaintiffs' claims should be dismissed under Rule 12(b)(6).

### A.  Plaintiffs Have Not Met Their Pleading Burden Under Rule 8.

To satisfy Rule 8, a complaint must make "[f]actual allegations [that are] enough to raise a right to relief above a speculative level[,]" and contain more than "a pleader's 'bare averment that he wants relief and is entitled to it.'" *Twombly*, 550 U.S. at 555 n.3 (citation omitted). Plaintiffs' Complaint does not meet this standard. For starters, Plaintiffs have not adequately pled that e.l.f. possesses or ever obtained their biometrics, which is a threshold requirement to state claims under BIPA Sections 15(a), (b), and (c). *See* 740 ILCS 14/15(a) ("A private entity in possession of biometric[s] . . ."); 740 ILCS 14/15(b) ("No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric[s] . . ."); 740 ILCS 14/15(c) ("No private entity in possession of a biometric[s]. . ."); *see also Heard v. Becton, Dickinson & Co*. (*"Heard I"*), 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) (granting defendant's motion to dismiss because plaintiff failed to allege that defendant "exercised *any* dominion or control over his biometric data," or explain how the defendant actively collected biometric data).

Instead, largely parroting the language of the statute, Plaintiffs allege in a vague and conclusory fashion that e.l.f. violated BIPA Sections 15(a), (b), and (c). Plaintiffs' central allegation is that "e.l.f. is collecting, capturing, possessing, or otherwise obtaining biometric information and identifiers from its online visitors." *Id.* ¶ 57. But to state a claim under BIPA, Plaintiffs must allege that e.l.f. (1) identified them (2) with data e.l.f. collected or possessed that is regulated by BIPA.  Plaintiffs don't come close to doing either.

1. **Plaintiffs do not allege that e.l.f. uses, or can use, "biometric identifiers" or "biometric information" to identify them.**

Data is regulated by BIPA only if it is "biometric information" or a "biometric identifier," as defined by the statute. "Biometric information" is "any information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. Relevant here, "biometric identifier" includes a "scan of face geometry," and likewise must be used to identify an individual. *See Daichendt v. CVS Pharmacy, Inc.*, No. 22-cv-3310, *8 (N.D. Ill. Dec. 2, 2022) (holding "plaintiffs must allege that defendant's collection of their biometric data made defendant capable of determining their identity") (emphasis omitted) (attached as Exhibit B); *Trio v. Turing Video, Inc.*, 2022 WL 4466050, at *12 (N.D. Ill. Sept. 26, 2022) (denying motion to dismiss on grounds that complaint alleged defendant's "artificial intelligence algorithm" "uses facial recognition software" and "recognizes the user," but noting that plaintiff must allege sufficient facts to allow for a plausible inference that defendant collected plaintiff's "biometric identifier" or stored her "biometric information" as those terms are defined under the plain language of BIPA); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) (interpreting "biometric identifier" under BIPA to mean a biology-based set of measurements that can be used to identify a person); *Barton v. Walmart Inc.*, No. 21 cv 4329 (May 31, 2022) (oral ruling) (attached as Exhibit C) (denying motion to dismiss on grounds that complaint alleged that Walmart "specifically identified" individual employees through voiceprint technology, but pointing out that identification is necessary to plead and prove a claim under BIPA); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at **1-5 (N.D. Ill. Sept. 15, 2017) (under BIPA, a "scan[]" by "facial recognition software" "extracts a highly detailed 'map' or 'template' for each face based on its unique points and contours."). Put differently, if a "biometric identifier" is not associated with an individual's identity, it is not an identifier at all. *See Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197,

1206 (2019) (BIPA protects a "secrecy interest" that is personal and unique to the individual whose biometrics are collected.); *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 58 (2021) (same); *McDonald v. Symphony Bronzeville Park, LLC*, 193 N.E.3d 1253, 1267-68 ¶¶ 43-44 (2022) (same).

Most recently, in *Daichendt*, the district court dismissed a Section 15(b) claim where the plaintiffs failed to allege biometric data collected by the defendant made the defendant "capable of" determining their identities. Ex. 2, at *8. Plaintiffs alleged CVS violated BIPA by collecting biometric data with a passport photo system used at its stores when a CVS employee took a photo with a digital camera and then used the system to scan the digital image for biometric identifiers. *Id.* at *2. Specifically, plaintiffs alleged that after a photo was taken, consumers would receive a verification certificate confirming "a scan of facial geometry was performed to confirm," the image had the correct size, width/height ratio, head size, position of the head, color brightness, color balance, eyes opened and looking straight ahead, mouth closed, no eye glasses, no glare, and a proper facial position. *Id*. at *2. These allegations, Judge Gettleman held, failed to allege that the defendant actually "'used' their biometric data to determine their identities," or even theoretically could do so. *Id.* at *8-9. Accordingly, the court dismissed the plaintiffs' Section 15(b) claim with prejudice. *Id.*

Similarly, Plaintiffs' only specific allegation about the technology is that the Virtual Try-On tool "employs advanced *facial detection* technology." Compl. ¶ 71 (emphasis added). By its own plain meaning, "detection" is different from "biometric identification." To "detect" means "to discover or determine the existence, presence, or fact of." *Detect*, Merriam-Webster, https://www.merriam-webster.com/dictionary/detect (Nov. 9 2022). In contrast, "biometrics" are "the measurement and analysis of unique physical or behavior characteristics (such as fingerprint

or voice patterns) *especially as a means of verifying personal identity*." *Biometrics*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/biometrics (Oct. 28, 2022) (emphasis added); *see also* No. Public Access 17-011, 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) (citing Ill. Att'y Gen. Pub. Acc. Op. No. 14-008, issued August 19, 2014, at 4) (defining the phrase in the same way Merriam-Webster dictionary does). "'[I]dentify' means to establish the identity of." *Nationstar Mortgage LLC v. Benavides*, 2020 IL App (2d) 190681, ¶ 21; *see also* Black's Law Dictionary (11th ed. 2019) (defining "identify" as "to prove the identity of a person or thing"); MERRIAM-WEBSTER, https://www.merriam-webster.com (2022) (defining "identifier" as "one that identifies," and "identify" as meaning to "perceive or state the identity of" or to "ascertain the identity of").

Putting the plain meaning of "biometric" and "identifier" together, "biometric identifier" necessarily includes use by the collector or possessor to identify an individual. "Detection" is neither "biometric" nor "identification" in any sense of those terms, and mere "detection" of a face is not a "biometric identifier" or "biometric information," and thus does not implicate BIPA. Plaintiffs' Complaint therefore fails to state a claim under BIPA.

### 2. Plaintiffs allege only facial detection done locally on their own device, which is not an allegation that e.l.f. collected or possessed "biometric identifiers" or "biometric information."

Separately, even assuming that the data alleged implicates BIPA at all (it doesn't), Plaintiffs fail to plausibly allege that e.l.f. ever possesses or collects anything from the face images that users voluntarily provide via the Virtual-Try On tool. Indeed, Plaintiffs do not even plausibly claim that the "biometric data" they fail to define ever leaves the user's device (it doesn't). Rather, Plaintiffs only vaguely assert that e.l.f. "obtains visitors biometric data locally from the live feed or photo on the user's device." Compl. ¶ 72. But Plaintiffs must do more. To state a BIPA claim, they must "plausibly establish that [e.l.f.] exercised control over plaintiff's data or otherwise held plaintiff's

data at its disposal." *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021); *see also Heard I*, 440 F. Supp. 3d at 968 (no "possession" where plaintiff failed to allege defendant "exercised *any* dominion or control over [his] biometric data.").

Plaintiffs' incoherent allegations are not sufficient to push any of their claims "across the line from conceivable to plausible." *Heard v. Becton, Dickinson & Co. ("Heard II")*, 524 F. Supp. 3d 831, 840 (N.D. Ill. 2021). As to their Section 15(a) claims, Plaintiffs do not plausibly allege that e.l.f. actually possessed any data used to identify them, and also merely parrot the language of the statute relating to biometric retention and destruction policies. Courts have dismissed similarly deficient complaints. *See*, *e.g.*, *Patterson v. Respondus, Inc.*, 2022 WL 860946, at *25 (N.D. Ill. Mar. 23, 2022) (dismissing 15(a) claim because plaintiff's "allegations about retention and destruction [were] entirely conclusory"); *Harvey v. Resurrection Univ.*, 2022 WL 3716213, at *2 (N.D. Ill. Aug. 29, 2022) (dismissing 15(a) claim where claims "merely parrot[ed] the statutory language without making any specific factual allegations about retention.").

A similar analysis applies to Plaintiffs' 15(c) claims, which summarily assert that e.l.f. profited from the possession of "biometrics." *See King v. PeopleNet Corp.*, 2021 WL 5006692, at *5 (N.D. Ill. Oct. 28, 2021) (plaintiff's allegation that defendant profited off of his biometric data failed to state a claim under BIPA Section 15(c) because defendant's "competitive advantage in the biometric timekeeping marketplace" was not an injury particular to plaintiff); *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 651 (S.D. Ill. 2021) (rejecting plaintiff's argument that defendant profited from the sale of biometrics as a result of its facial recognition feature as insufficiently pled). But Section 15(c) prohibits for-profit *sales* of biometric data. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021). Plaintiffs appear to be arguing that BIPA prohibits the use of

14

*any* technology that they think theoretically could collect or capture biometric data. This misreading of the statute is a fatal flaw that necessitates the dismissal of this absurd claim.

Finally, Plaintiffs' Section 15(b) claim is likewise insufficiently pled, as the Complaint does not allege any "affirmative act" by which e.l.f. collected their "biometric" data. *Heard II*, 524 F. Supp. 3d at 841. The Complaint's speculative allegations about potential acquisition of Plaintiffs' biometrics, including those pled upon "information and belief," (*see* compl. ¶¶ 77, 93, 114), do not satisfy Rule 8. *See Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507, at *6 (S.D. Ill. Aug. 5, 2022) (dismissing 15(b) claim because plaintiff "failed to plead (or sufficiently raise the inference) that [defendant] ever did anything to extract or obtain . . . biometric information"). Nowhere in the Complaint do Plaintiffs allege that e.l.f. itself stored biometric information, or that e.l.f. used biometric information for its own purposes. *See Stauffer*, 2022 WL 3139507 at *6 (dismissing 15(b) claim for analogous reasons).

**B. Plaintiffs' Section 15(a) Claims Also Must be Dismissed As Not Ripe.**

Plaintiffs contend that the Terms of Use does not comply with Section 15(a) because it does not state that biometrics will be permanently destroyed within at least three years of a user's last interactions with the Virtual Try-On tool. Compl. ¶¶ 15, 49, 74, 99. Notwithstanding the fact that e.l.f. cannot destroy what it does not have, in addition to failing to state a claim for the reasons in Section II.A above, this claim also fails to state a claim because it is not ripe. Under the statute, a private entity is only required to develop a written policy within 3 years of the individual's last interaction with the private entity. *Id.* As established in the Complaint, none of the Plaintiffs' last use of the Virtual Try-On tool occurred more than 15 months ago. *See* Compl. ¶ 20 (Ariel Davis's most recent use of the Virtual try-on tool occurred in or about January 2022); *Id.* ¶ 26 (Lacie Davis's most recent use occurred between September and December 2021); *Id.* ¶ 32 (Taylor Davis's most recent use occurred around January 2022).

It is undisputed that three years have not passed since Plaintiffs' purported last interaction with the Virtual Try-On tool. Accordingly, Plaintiffs' 15(a) claim is not ripe and must be dismissed. *See Horn v. Method Prod., PBC*, 2022 WL 1090887, at \*4 (N.D. Ill. Apr. 12, 2022) (holding that, until three years have passed since the alleged collection of biometric information, any argument that defendant did not comply with Section 15(a) is not ripe); *Kislov v. Am. Airlines, Inc.*, 566 F. Supp. 3d 909, 914 (N.D. Ill. 2021) (finding that any claim for unlawful retention of biometric data under Section 15(a) is not ripe where a defendant has not retained plaintiff's biometrics for more than three years).

### III. Plaintiffs Fail To State A Claim For Heightened Damages.

BIPA is not a strict-liability statute, and its heightened liquidated damages provision is not automatically triggered. *Kukovec v. Estee Lauder Companies, Inc.*, 2022 WL 16744196, at \*8 (N.D. Ill. Nov. 7, 2022) (dismissing plaintiff's claim of intentional and reckless conduct because plaintiff did not point to details sufficient to render the claim plausible). BIPA Section 20 sets forth potential recovery amounts for both "negligent" and "intentional or reckless" BIPA violations. 740 ILCS 14/20. Section 20 requires heightened culpability to apply to all intentional or reckless BIPA violations. 740 ILCS 14/20(2). Allowing Plaintiffs to "plead" recklessness or intent by parroting BIPA renders Section 20 superfluous. Conclusory statements like Plaintiffs' do not suffice to state a claim for heightened damages, and such claims should be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated:  December 2, 2022                    Respectfully submitted,

                                            E.L.F. COSMETICS, INC.

                                            By:  /s/ Matthew C. Wolfe
                                                    One of Its Attorneys

                                            Matthew C. Wolfe
                                            Erin Bolan Hines
                                            Yara K. Rashad
                                            SHOOK, HARDY & BACON L.L.P.
                                            111 South Wacker Drive, Suite 4700
                                            Chicago, IL 60606
                                            Tel:  (312) 704-7700
                                            mwolfe@shb.com
                                            ehines@shb.com
                                            yrashad@shb.com

                                            *Attorneys for Defendant e.l.f. Cosmetics, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew C. Wolfe, an attorney, hereby certify that on **December 2, 2022,** I caused a true and correct copy of **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN FAVOR OF ARBITRATION, OR IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM** to be served on all counsel of record via ECF pursuant to the General Order on Electronic Filing of the United States District Court, Northern District of Illinois.


*/s/ Matthew C. Wolfe*