**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ARIEL DAVIS, LACIE DAVIS, and TAYLOR DAVIS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>e.l.f. COSMETICS, INC.,<br><br>        Defendant. | Case No. 1:22-cv-05069<br><br>Hon. Martha M. Pacold<br><br>Magistrate Sheila M. Finnegan |

**PLAINTIFFS' OPPOSITION TO DEFENDANT e.l.f. COSMETICS, INC.'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT IN FAVOR OF
ARBITRATION, OR IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

## **TOC**

I.      FACTUAL BACKGROUND ................................................................. 1

A.     The Illinois Biometric Information Privacy Act ....................................... 1

B.     Elf's VTO Captured Plaintiffs' Biometrics ........................................... 1

C.     Plaintiffs Were Not Presented With Elf's Terms of Use ......................... 2

D.     The Terms Do Not Inform Users that their Biometrics Will Be Collected ........... 2

E.     Elf's Failure to Comply with §§ 15(a), (b) and (c) of BIPA.................................. 3

II.     LEGAL STANDARD ........................................................................... 3

III.    ARGUMENT .................................................................................... 4

A.     Elf's Motion to Dismiss in Favor of Arbitration Fails........................................... 4

1.     Plaintiffs Lacked Actual or Constructive Knowledge of the Terms...................... 5

B.     Plaintiffs Plausibly Allege Elf Has Violated §§ 15(a)-(c) of BIPA...................... 8

1.     Plaintiffs Have Sufficiently Pleaded That Elf Possesses and Also Collected, Captured, or Otherwise Obtained Their Biometric Data. ...................... 8

2.     BIPA Does Not Require Allegations That the Biometrics At Issue Have Been Used to Identify Plaintiffs ............................................................... 11

3.     Plaintiffs Do More Than Just Parrot the Language of BIPA. .............................. 13

C.     Plaintiffs' Section 15(a) Claims are Ripe ........................................................... 14

D.     Plaintiffs Have Properly Alleged Their Demand For Heightened Damages........ 15

IV.    CONCLUSION.................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acaley v. Vimeo, Inc.*,
    464 F. Supp. 3d 959 (N.D. Ill. 2020) ........................................................................6

*Anand v. Heath*,
    2019 WL 2716213 (N.D. Ill. June 28, 2019) ............................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................3

*AT&T Mobility LLC v. Conception*,
    563 U.S. 333 (2011) ....................................................................................................4

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,
    377 F.3d 682 (7th Cir. 2004) ....................................................................................16

*Barton v. Walmart, Inc.*,
    No. 21 cv-4329 (N.D. Ill. May 31, 2022) ...............................................................12

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) .........................................................................6

*Brown v. Budz*,
    398 F.3d 904 (7th Cir. 2005) ......................................................................................9

*Daichendt v. CVS Pharmacy, Inc.*,
    2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ....................................................12, 13

*Fjeta v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) .......................................................................6

*Forby v. One Techs., LP*,
    2016 WL 11746078 (S.D. Ill. Mar. 25, 2016) ...........................................................6

*Fox v. Dakkota Integrated Sys., LLC*,
    980 F.3d 1146 (7th Cir. 2020) ..................................................................................14

*Gibson v. City of Chi.*,
    910 F.2d 1510 (7th Cir. 1990) ....................................................................................3

*Gorny v. Wayfair Inc.*,
    2019 WL 2409595 (N.D. Ill. June 7, 2019) ..............................................................6

*Gupta v. Morgan Stanley Smith Barney, LLC*,
  934 F.3d 705 (7th Cir. 2019) ................................................5

*Harvey v. Resurrection Univ.*,
  2022 WL 3716213 (N.D. Ill. Aug. 29, 2022) ..........................14

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ...............................10, 11

*Heard v. Becton, Dickinson & Co.*,
  524 F. Supp. 3d 831 (N.D. Ill. 2021) ............................9, 10, 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)......................................................8

*Hines v. Overstock*,
  668 F. Supp. 2d 362 (E.D.N.Y. 2009) ....................................7

*Horn v. Method Prod., PBC*,
  2022 WL 1090887 (N.D. Ill. Apr. 12, 2022) ..........................15

*Hubbert v. Dell Corp.*,
  835 N.E.2d 113 (Ill. App. Ct. 2005) .....................................6

*Hussein v. Coinabul, LLC*,
  No. 14 C 5735, 2014 WL 7261240 (N.D. Ill. Dec. 19, 2014) ............6

*Jacobs v. Hanwha Techwin Am., Inc.*,
  2021 WL 3172967 (N.D. Ill. July 27, 2021)........................10, 11

*Johnson v. Uber Techs., Inc.*,
  2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) ...........................6

*Kislov v. Am. Airlines, Inc.*,
  566 F. Supp. 3d 909 (N.D. Ill. 2021) ..................................15

*Kukovec v. The Estee Lauder Companies, Inc.*,
  2022 WL 16744196 (N.D. Ill Nov. 7, 2022) .......................7, 10, 11

*McDonald v. Symphony Bronzeville Park, LLC*,
  2022 IL 126511 ..........................................................13

*Melvin v. Big Data Arts, LLC*,
  553 F. Supp. 3d 447 (N.D. Ill. 2021) .....................................5

*Meyer v. Uber Technologies, Inc.*,
  868 F.3d 66 (2d Cir. 2017)...............................................6

*Monroy v. Shutterfly, Inc.*,
   2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ........................................................13

*Mora v. J&M Plating, Inc.*,
   --- N.E.3d ---, 2022 IL App (2d) 210692 ........................................................14, 15

*Neals v. PAR Tech. Corp.*,
   419 F. Supp. 3d 1088 (N.D. Ill. 2019) ...............................................................9, 15

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (C.D. Cal. 2012)..............................................................................7

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016).....................................................................................7

*Nseumen v. Dal Glob. Servs., Inc.*,
   2021 WL 4728707 (N.D. Ill. Oct. 11, 2021)..........................................................15

*Paragon Micro, Inc. v. Bundy*,
   22 F. Supp. 3d 880 (N.D. Ill. 2014) .........................................................................5

*Patterson v. Respondus, Inc.*,
   593 F. Supp. 3d 783 (N.D. Ill. 2022) .....................................................................14

*People v. Ward*,
   215 Ill. 2d 317 (2005) ..............................................................................................8

*Powell v. Shiseido Americas Corp.*,
   21-CV-2295, ECF #18 (C.D. Ill. Aug. 22, 2022) ............................................10, 11

*Pruitt v. Par-A-Dice Hotel Casino*,
   2020 WL 5118035 (C.D. Ill. Aug. 31, 2020)...........................................................9

*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..............................................................12, 13

*Rogers v. BNSF Ry. Co.*,
   2019 WL 5635180 (N.D. Ill. Oct. 31, 2019)..........................................................15

*Rosenbach v. Six Flags Ent. Corp.*,
   2019 IL 123186...............................................................................................8, 12, 13

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) ..................................................................................5

*Sosa v. Onfido*,
   2021 WL 38141 (N.D. Ill. Jan. 5, 2021) ..................................................................5

*Specht v. Netscape Communications, Corp.*,
   306 F.3d 17 (2d Cir. 2002).......................................................................................................7

*Starkey v. G Adventures, Inc.*,
   796 F.3d 193 (2d Cir. 2015)...................................................................................................6

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
   2022 WL 3139507 (S.D. Ill. Aug. 5, 2022) ....................................................................10, 11

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) .................................................................................................3

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ...................................................................................6

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008) ...............................................................................................3

*Theriot v. Louis Vuitton N. Am., Inc.*,
   2022 WL 17417261 (S.D.N.Y. Dec. 5, 2022) ........................................................................9

*Treiber & Straub, Inc. v. U.P.S., Inc.*,
   474 F.3d 379 (7th Cir. 2007) .................................................................................................6

*Trio v. Turing Video, Inc.*,
   2022 WL 4466050 (N.D. Ill. Sept. 26, 2022) ......................................................................13

*Van Tassell v. United Mktg. Grp., LLC*,
   795 F. Supp. 2d 770 (N.D. Ill. 2011) .....................................................................................6

*W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*,
   183 N.E.3d 47 (2021)...........................................................................................................13

*Watson v. Legacy Healthcare Fin. Servs., LLC*,
   2021 IL App (1st) 210279......................................................................................................8

*William Charles Constr. Co. v. Teamsters Local Union 627*,
   827 F.3d 672 (7th Cir. 2016) .................................................................................................5

*In re Zappos.com, Inc., Customer Data Breach Sec. Litig.*,
   893 F. Supp. 2d 1058 (D. Nev. 2012).....................................................................................7

## Statutes

740 ILCS 14/1 *et seq.*...............................................................................................................12

740 ILCS 14/5(c) .......................................................................................................................1

740 ILCS 14/5(g) .....................................................................................................................15

740 ILCS 14/10 .................................................................................................12

740 ILCS 14/15(a)-(b) .........................................................................................1

9 U.S.C. §2 .........................................................................................................4

Plaintiffs have plausibly alleged that Defendant e.l.f. Cosmetics, Inc. ("Elf") is violating the Illinois Biometric Information Privacy Act ("BIPA") in connection with its Virtual Try-On tool ("VTO"). Elf's Motion (Dkt. 24) hinges on misstatements of the facts alleged in the CAC[1] and a misreading of the relevant law. For example, Elf asserts Plaintiffs were presented with a pop-up with hyperlinks to Elf's Terms of Use ("Terms"), which contain an arbitration clause, but the pop-up in question was added to the VTO months after Plaintiffs last used it. Elf cannot enforce an arbitration clause Plaintiffs were not presented with and did not affirmatively assent to. Elf also miscites the law to add requirements to BIPA not found in the statute. But Plaintiffs have pleaded facts sufficient to support the actual elements of their claims that Elf violated §§ 15(a)-(c) of BIPA. As detailed below, this Court should reject Elf's arguments and deny Elf's Motion in its entirety.

## I. FACTUAL BACKGROUND

### A. The Illinois Biometric Information Privacy Act

BIPA was enacted to safeguard the privacy rights of consumers in Illinois in their sensitive biometric identifiers and information (collectively "biometrics"). CAC ¶¶ 5-6. Biometrics are "biologically unique to the individual" and leave consumers with "no recourse" and a "heightened risk for identity theft" when compromised 740 ILCS 14/5(c). Private entities, like Elf, in possession of biometrics, must: develop, publish, and comply with a written retention schedule and destruction guidelines for those biometrics; and obtain informed consent from consumers before collecting, capturing, or otherwise obtaining their biometrics. *Id.* at 14/15(a)-(b).

### B. Elf's VTO Captured Plaintiffs' Biometrics

Elf sells its products online and at major retailers, and invites website users to virtually "try on" its makeup products using the VTO. CAC ¶¶ 39-40, 56-57. Once a user activates the VTO,

---

[1] Plaintiffs' Class Action Complaint is referred to herein as the "CAC."

Elf collects, captures, possesses, or otherwise obtains that user's biometrics, including a scan of their face geometry, through the VTO. *Id.* ¶¶ 68-72. Plaintiff Ariel Davis used Elf's VTO 2-5 times to try on makeup, with her last use in or about January 2022. CAC ¶ 20. Plaintiff Lacie Davis used the VTO 2-5 times to try on makeup, with her last use between September and December 2021. *Id.* ¶ 26. Plaintiff Taylor Davis used the VTO 5 times, with her last use around January 2022. *Id.* ¶32. Each time Plaintiffs used the VTO, Elf collected and possessed their biometrics, including facial geometry scans, without their consent. *Id.* ¶¶ 21-24, 27-30, 33-36, 108. The facial geometry scans are what allow the VTO to virtually overlay makeup onto VTO users' faces. *Id.* ¶ 113.

### C.     Plaintiffs Were Not Presented With Elf's Terms of Use

Plaintiffs, who last used the VTO in January 2022 at the latest, were never presented with the VTO pop-up that provides, "By clicking 'Proceed,' you agree to e.l.f.'s Terms of Use and Privacy Notice, including e.l.f.'s Notice of Financial Incentive." CAC ¶¶ 20, 26, 32, 61. Per Elf's own Declaration, Elf added the pop-up window with a hyperlink to its Terms to its website on May 25, 2022. Dkt. 24-001, Decl. at ¶10. Accordingly, Plaintiffs also never assented to Elf's Terms or the arbitration clause.[2] At all relevant times, the sole link to the Terms was in small print in the footer at the bottom of each page of Elf's website, not in the VTO or anywhere near the "Virtual Try On" button. CAC ¶¶ 59-60, 73. Further, none of the Plaintiffs recall reviewing Elf's Terms before using the VTO or recall Elf the Terms readily accessible. *Id.* ¶¶ 21, 25, 27, 31, 33, 37.

### D.     The Terms Do Not Inform Users that their Biometrics Will Be Collected

The Terms are also insufficient to inform VTO users that their biometrics are being captured and collected by Elf. CAC ¶ 65. The Terms read, in relevant part:

> By using the e.l.f. Virtual Makeup Try-On Tool and/or any other applications, programs, or technologies that use your camera and/or device, you consent to the

---

[2] Plaintiffs do not concede that even if such a pop-up had existed at the time of their use that it would have provided sufficient notice of the arbitration terms at issue.

use of your camera and/or device to permit the tool to take or use your image and overlay a portion or region of the face in the image with an image of the selected cosmetic product.

*Id*. The Terms do not tell users the VTO works "by scanning their faces" and using the facial scans to place the makeup; when the scans will be destroyed; or how they are used. *Id*. ¶ 66.[3]

### E. Elf's Failure to Comply with §§ 15(a), (b) and (c) of BIPA

Elf failed to comply with §§ 15(a)-(c) of BIPA because Elf: (1) does not inform consumers in writing that their biometrics are being collected and stored or of the specific purpose and length of time for which Elf collects, stores, and uses their biometrics; (2) does not make public or comply with a written policy establishing a retention and destruction schedule for the biometrics Elf possesses; (3) does not obtain a written release from consumers before collecting their biometrics; and (4) uses consumers' VTO-obtained biometrics to otherwise profit from them, including to entice consumers to purchase its products. CAC ¶¶ 89, 92-93, 100-101, 109-115.

## II. LEGAL STANDARD

In ruling on a Rule 12(b)(6) motion, courts construe the complaint in the light most favorable to the plaintiff, with all well pleaded allegations taken as true, and all reasonable inferences construed in plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). A Rule 12(b)(6) motion is meant to "test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). A "pleader's responsibility" is merely to "state a claim to relief that is plausible on its face." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs have met this standard.

---

[3] Elf's Privacy Policy also fails to disclose its capture, collection, or use of biometrics. *Id*. ¶ 64.

## III.   ARGUMENT

### A.   Elf's Motion to Dismiss in Favor of Arbitration Fails.

Elf's request for dismissal relies entirely on the arbitration clause in its hidden Terms, and Elf's contention that Plaintiffs' claims should be dismissed in favor of arbitration because Plaintiffs were purportedly presented with a pop-up notice informing Plaintiffs that, by proceeding to the VTO, they were agreeing to Elf's Terms. Mot. at 3. This contention is factually inaccurate and contradicted by the CAC and Elf's own declaration, and so provides no basis for dismissal.

As made clear in both the CAC and Elf's Declaration, Plaintiffs were never presented with the pop-up window that links to Elf's Terms and Privacy Notice as it did not exist on Elf's website during the time when Plaintiffs accessed the VTO. CAC ¶¶ 20, 26, 32, 61; Dkt. 24-001, Rungsarangnont Decl. ¶10. Elf concedes in its Declaration that the pop-up window linking its Terms and Privacy Notice ***was not implemented until May 25, 2022***, several months after Plaintiffs last accessed the VTO, which was in January 2022 at the latest. *Id*. Plaintiffs were never presented with and do not recall reviewing Elf's Terms or Privacy Policy. CAC ¶¶ 20-21, 25-27, 31-33, 37. Instead, at all relevant times, the Terms were only accessible through an inconspicuous hyperlink in a footer at the bottom of each page of Elf's website, not within the VTO or anywhere in the vicinity of the "Virtual Try On" button. *Id*. ¶¶ 59-60 (see screenshots), 73. Thus, Plaintiffs could not have consented to the Terms or entered into an enforceable agreement to arbitrate as Plaintiffs did not have actual or inquiry notice of the Terms, or the arbitration clause in the Terms.

A federal court's decision whether to compel arbitration is governed by the FAA, which provides that "[a] written provision in… a contract… to settle by arbitration a controversy thereafter arising out of [the] contract… shall be valid, irrevocable, and enforceable." 9 U.S.C. §2. The FAA "embod[ies] [a] national policy favoring arbitration." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 346 (2011) (internal citation omitted). This "liberal" policy has its

limits, however, and "[p]arties may only be compelled to arbitrate those issues they have agreed to arbitrate." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 887 (N.D. Ill. 2014).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *William Charles Constr. Co. v. Teamsters Local Union 627*, 827 F.3d 672, 679 (7th Cir. 2016) (quoting *AT&T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 648 (1986)). Elf's argument that Plaintiffs must arbitrate their claims should be rejected because Plaintiffs were never presented with Elf's Terms and thus could not agree to be bound by Elf's "browsewrap" agreement.

Under the FAA, arbitration should be compelled only when: "(1) there is an enforceable written agreement to arbitrate; (2) the dispute falls within the scope of the arbitration agreement; and (3) a party refuses to arbitrate." *Sosa v. Onfido*, 2021 WL 38141, at *2 (N.D. Ill. Jan. 5, 2021) (internal citation omitted); *see also Melvin v. Big Data Arts, LLC*, 553 F. Supp. 3d 447, 451 (N.D. Ill. 2021). Whether an arbitration agreement exists is a matter of state contract law. *Gupta v. Morgan Stanley Smith Barney, LLC,* 934 F.3d 705, 710–11 (7th Cir. 2019). Under Illinois law, a fundamental basis for the existence of an enforceable contract is "a meeting of the minds or mutual assent as to the terms of the contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). When analyzing an online contract, courts "ask whether the web pages presented to the [user] adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the [user] receive[d] reasonable notice of those terms." *Id*. at 1034-35. "This is a fact-intensive inquiry." *Id.* The facts here, especially at this stage of the case, show there was no reasonable notice, so there is no valid agreement to arbitrate.

### 1. Plaintiffs Lacked Actual or Constructive Knowledge of the Terms

During the relevant time Plaintiffs utilized the VTO, Elf only presented its Terms in a browsewrap agreement, hyperlinked in a footer at the bottom of each webpage buried among many

other unrelated links. [4] Browsewrap agreements occur where "notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink." *Hussein v. Coinabul, LLC*, No. 14 C 5735, 2014 WL 7261240, at *2 (N.D. Ill. Dec. 19, 2014) (internal citations omitted). The validity of a browsewrap agreement depends on whether the user had actual or constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance. *Id.*; *see also Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011). Here, Plaintiffs did not have actual or constructive notice of Elf's Terms, so acceptance cannot be inferred.

Further, Plaintiffs allege that they do not recall reviewing Elf's Terms and thus Elf cannot establish that Plaintiffs had actual notice of the Terms. CAC ¶¶ 25, 31, 37. "Where [] there is no evidence the user had actual knowledge of the agreement, the validity of the … agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 401 (E.D.N.Y. 2015) (internal citation omitted). Whether a reasonably prudent user would be on constructive notice of the existence of contract terms presented on a webpage depends heavily on whether the design and content of that webpage rendered the existence of terms reasonably conspicuous. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016). "Clarity and conspicuousness of arbitration terms are important

---

[4] Elf's reliance on a long list of clickwrap agreement cases that require a manifestation of assent, *Hubbert v. Dell Corp.*, 835 N.E.2d 113 (Ill. App. Ct. 2005), *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 966 (N.D. Ill. 2020), *Gorny v. Wayfair Inc.*, 2019 WL 2409595, at *5-6 (N.D. Ill. June 7, 2019), *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *3-4 (N.D. Ill. Sept. 20, 2018), *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 382 (7th Cir. 2007), *Anand v. Heath*, 2019 WL 2716213, at *5 (N.D. Ill. June 28, 2019), *Forby v. One Techs., LP*, 2016 WL 11746078, at *7 (S.D. Ill. Mar. 25, 2016), *Fjeta v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012), *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 71 (2d Cir. 2017), *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 195 (2d Cir. 2015), and *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) is misplaced. Here, at all relevant times, Elf used a browsewrap agreement hyperlinked at the bottom of the webpage among many other links. Elf's argument that the Terms are a clickwrap agreement Plaintiffs had to accept to use the VTO ignores that Elf added the pop-up notice of its Terms *after* Plaintiffs last used the VTO. CAC ¶¶ 20, 26, 32, 61; Dkt. 24-001, at ¶10.

in securing informed assent." *Specht v. Netscape Communications, Corp.*, 306 F.3d 17, 30 (2d Cir. 2002). When terms are linked in parts of a webpage users are unlikely to see, courts refuse to find constructive notice. *Id.* at 30–32 (finding insufficient notice where only reference to terms of use was a hyperlink at the bottom of screen and webpage did not indicate that "download now" button constituted agreement to terms); *Hines v. Overstock*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (no notice where "website did not prompt [the user] to review the Terms" and "the link to the [terms] was not prominently displayed so as to provide reasonable notice of the [terms]").

At the time Plaintiffs used the VTO, the only reference to Elf's Terms was in a hyperlink hidden at the very bottom of each page of Elf's website in a footer, past many pages of content including product details and customer reviews, amongst dozens of other hyperlinks, CAC ¶ 73, which is insufficient to put a plaintiff on notice. "A website design that requires users to scroll all the way to the bottom to even become aware of the site's terms and conditions, then requires them to click on a buried link to learn the content of those terms and conditions, does not put a user on constructive notice." *Kukovec v. The Estee Lauder Companies, Inc.*, 2022 WL 16744196, at \*6-7 (N.D. Ill Nov. 7, 2022).[5] A reasonably prudent user, like Plaintiffs, would not have had constructive notice of the Terms because (1) they were not linked to the VTO, (2) they were only accessible through an inconspicuous hyperlink buried in a footer at the very bottom of each page of Elf's website, and (3) the hyperlink was obfuscated among many other links.

---

[5] Other courts faced with similar facts have found a lack of reasonable notice of the terms and denied enforceability of an arbitration clause. *See, e.g, Specht*, 306 F.3d at 32 (reference to the existence of terms on a unexplored and submerged portion of the defendant's webpage is not sufficient to place consumers on inquiry or constructive notice of those terms); *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (C.D. Cal. 2012) (denying enforceability of arbitration clause in website's browsewrap "terms of use" where the hyperlink was located at the bottom left corner of each webpage); *In re Zappos.com, Inc., Customer Data Breach Sec. Litig.*, 893 F. Supp. 2d 1058, 1064–65 (D. Nev. 2012) (browsewrap agreement unenforceable where the hyperlink to "terms of use" is "inconspicuous, buried in the middle to bottom of every [defendant] webpage among many other links, and the website never directs a user to the Terms of Use").

Elf has not satisfied its burden to establish that a valid and enforceable arbitration agreement exists.[6] Since Plaintiffs did not have either actual or inquiry notice of the arbitration clause in Elf's Terms, they could not have and did not manifest assent to any portion of the Terms, much less to the arbitration clause, so no agreement to arbitrate exists between the parties.

**B.**     **Plaintiffs Plausibly Allege Elf Has Violated §§ 15(a)-(c) of BIPA.**

**1.**     **Plaintiffs Have Sufficiently Pleaded That Elf Possesses and Also Collected, Captured, or Otherwise Obtained Their Biometric Data.**

Elf argues with respect to Plaintiffs' Section 15(a), (b), and (c) claims that Plaintiffs fail to allege that Elf "ever possesses or collects anything" from Plaintiffs, much less their biometric data. Mot. at 13-15. BIPA does not define possession or collection, so courts look to their "popularly understood meaning." *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 29. "'Possession' is 'the act or condition of having in or taking into one's control or holding at one's disposal.'" *People v. Ward*, 215 Ill. 2d 317, 325 (2005). Collect means "to gather or exact from a number of persons or sources." https://www.merriam-webster.com/dictionary/collect (last visited 12/29/2022); *see also Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 IL App (1st) 210279, ¶¶ 59-60 (applying same definition to BIPA claims). Elf both "possesses" and "collect[s], capture[s], receive[s] through trade, or otherwise obtain[s]" Plaintiffs' and other VTO users' biometric data.

Plaintiffs have plausibly alleged: (1) Elf's inclusion of the VTO on its website; (2) that Elf invites website users to virtually try on Elf's makeup products through the VTO; (3) the process by which a visitor to Elf's website can access the VTO; (4) how the VTO works, including that it captures facial geometry scans of VTO users' faces creating a detailed geometric map of the user's face; (5) that facial geometry scans are required by the VTO for it to work; (6) that Elf accesses

---

[6] Elf's argument that any "dispute about the applicability and enforceability of the parties' agreement to the arbitration clause in this litigation… would be for the arbitrator, not this Court, to resolve" (Mot. at 9) is without merit. It is well-settled that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

the VTO user's device to capture their face geometry scans; (7) that Elf collects, captures, or otherwise obtains VTO users' biometric identifiers and biometric information by operating the VTO on its website; and (8) that at the time the CAC was filed, Elf still possessed the biometrics obtained by Elf through its VTO. CAC ¶¶ 10-11, 14, 56-60, 68-72, 89-90, 93, 97-98, 106-108, 113.[7] The detail provided by Plaintiffs amply alleges that Elf (1) "had or took into its control or held at its disposal" a scan of Plaintiffs' facial geometry (that is, that Elf "possessed" it), and (2) that Elf gathered and extracted data on Plaintiffs' facial features and contours into one place (that is, that it collected, captured, or otherwise obtained Plaintiffs' facial geometry).

Other courts, considering substantially similar allegations have found them sufficient at the pleadings stage. *See, e.g.*, *Theriot v. Louis Vuitton N. Am., Inc.*, 2022 WL 17417261, at *4 (S.D.N.Y. Dec. 5, 2022) (allegations were sufficient to state a claim under § 15(b) where plaintiff alleged "[defendant] collects detailed and sensitive biometric identifiers and information, including complete facial scans, of its users through the Virtual Try-On tool," and "that [defendant] takes active steps to collect users' facial scans using this technology, such as inviting users to take advantage of the Virtual Try-On tool."); *Kukovec*, 2022 WL 16744196, at *6-7 (denying motion to dismiss VTO-related BIPA claims where plaintiff "explains how the try-on tool works: using facial-geometry scans from a user's uploaded picture or live camera, the tool 'identif[ies] the shape

---

[7] Elf's complaint that some of these allegations were insufficiently detailed or made upon information and belief are not well taken. *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." (citation and internal quotation marks omitted)); *Heard v. Becton, Dickinson & Co.* ("*Heard II*"), 524 F. Supp. 3d 831, 840 (N.D. Ill. 2021) (at the pleading stage, a "plaintiff need not show in granular detail the precise means by which users' biometric data travelled" from the devices collecting the biometric data to defendant); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019) ("Plaintiff presents 'a story that holds together' by alleging that [defendant] collected such information through its customer's use of [defendant's] system; nothing more is needed under federal notice pleading standards."); *Pruitt v. Par-A-Dice Hotel Casino*, 2020 WL 5118035 at *3 (C.D. Ill. Aug. 31, 2020) (defendants were on notice of basis for BIPA claims where plaintiff alleged that defendant conducted facial geometry scans using security cameras without consent).

and features of the user's face in order to accurately overlay the virtual makeup product onto the image provided,' making it "reasonable to infer that collection of biometric data is necessary for it to work."); *Powell v. Shiseido Americas Corp.*, 21-CV-2295, ECF #18 at 13-14 (C.D. Ill. Aug. 22, 2022) (denying motion to dismiss VTO related BIPA claims because "Plaintiff's biometric identifiers were captured through technology placed on [d]efendant's websites. At this stage of the proceedings, it can be plausibly inferred that [d]efendant controls or holds at its disposal data generated at its own websites.") (see **Exhibit A**).

Further, this Court should disregard Elf's argument that Plaintiffs do not allege that the data collected by Elf leaves the user's device. First, there is no such requirement in BIPA. Plaintiffs have plausibly alleged that Elf possesses, collects, captures, or otherwise obtains biometrics. This is sufficient to state a BIPA claim. Second, Elf asks this Court to take as true *its* factual assertion that data does not leave the user's device, which is inappropriate at the pleading stage. What Elf does with VTO users' biometrics once they are in Elf's possession remains to be seen in discovery.

Elf's reliance on *Jacobs v. Hanwha Techwin Am., Inc*., 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021), *Heard v. Becton, Dickinson & Co.* ("*Heard I*"), 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020), *Heard II*, 524 F. Supp. 3d at 841 and *Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507, at *6 (S.D. Ill. Aug. 5, 2022), is misplaced. In *Jacobs*, 2021 WL 3172967, at *3, and *Heard I*, 440 F. Supp. 3d at 963, the plaintiff sued the technology developer, not the entity that was actually using the VTO and requiring the collection of biometric data. Here, Plaintiffs have sued the technology *user* and director, not the technology developer. *Kukovec*, 2022 WL 16744196, at *7 (distinguishing *Heard I* and *Jacobs* on the same grounds and denying motion to dismiss because "plaintiff has alleged enough to infer that the defendant captured her biometric information and no intermediary separated the defendant from the collection of plaintiff's facial

geometry."). While in *Stauffer*, 2022 WL 3139507, at *6, the court held that the plaintiff failed to plead that the defendant franchiser (again not the entity actually requiring plaintiff to provide her biometrics) "ever did anything to extract or obtain the biometric information" at issue, while Plaintiffs here have alleged that: Elf placed the VTO on its website, encouraged website users to virtually try on makeup using the VTO, collected their facial geometry scans – which are biometric identifiers – through the VTO (which required those facial geometry scans in order to work), and Elf used the facial geometry scans it collects to market and sell its products by displaying an accurate representation of what Elf's products will look like on VTO users' faces. CAC ¶¶ 10-11, 14, 56-60, 68-72, 89-90, 93, 97-98, 106-108, 113. In *Heard II*, 524 F. Supp. 3d at 841, the court denied a motion to dismiss since the allegations in the complaint "suggest that [defendant] itself plays an active role in collecting or otherwise obtaining users' biometric information." So do the allegations here. CAC ¶¶ 10-11, 14, 56-60, 68-72, 89-90, 93, 97-98, 106-108, 113. *See also, Powell,* at *12 (allegations that "[d]efendant procured the [] application, placed it on its [] website under the name [VTO], and put buttons or links to that application on pages for … its makeup products, thus directing website users to that application" sufficiently alleged an "active step").

### 2. BIPA Does Not Require Allegations That the Biometrics At Issue Have Been Used to Identify Plaintiffs

Elf's other main argument under Rule 12(b)(6) is that Plaintiffs fail to state a claim under BIPA §§ 15(a), (b) or (c) because they have not alleged that Elf used the biometrics it collected and possessed to identify them. Mot. at 10-13. But BIPA contains no such requirement. When construing a statute, courts look to the plain and ordinary meaning of the words used to determine the legislature's intent. *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 24. They "may not" read in additional "exceptions, limitations, or conditions." *Id.*

BIPA regulates "biometric identifiers" and "biometric information," as those terms are defined in the statute. 740 ILCS 14/1 *et seq.* BIPA expressly defines a biometric identifier as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.[8] There are no modifiers to that definition limiting a covered "scan of hand or face geometry" to a subset of scans actually used by the defendant to identify an individual. *Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022), the main case Elf relies upon, similarly rejects Elf's argument. In *Daichendt*, the court explained that it "disagrees with defendant that plaintiffs must specifically allege that defendant, in fact, 'used' their biometric data to determine their identities." *Id.* Barton v. Walmart, Inc., No. 21 cv-4329 (N.D. Ill. May 31, 2022), an unpublished oral ruling (Dkt. No. 24-003), is inapposite. In *Barton*, pp. 5:15-20, 9:4-14, there was an open question as to whether the plaintiff sufficiently alleged that the defendant captured voiceprints, which are biometric identifiers, or voice recordings, which are not; and the court did not actually address whether BIPA requires allegations that the biometrics at issue were used to identify the plaintiff because, even if it did, plaintiffs had plausibly so alleged.

The court in *Daichendt*, 2022 WL 17404488, at *5, did hold that "plaintiffs must allege that defendant's collection of their biometric data made defendant capable of determining their identities," but *Daichendt* dealt with allegations that the defendant scanned passport photographs for particular characteristics of the photograph (for example, whether the eyes were opened, and where the head was positioned in the photograph). Those allegations are a far cry from Plaintiffs' allegations here: Plaintiffs have alleged that Elf created a complete scan of Plaintiffs' facial

---

[8] Elf's attempts to redefine the meaning of "biometric identifier" through citations to dictionary definitions of the terms "biometrics," "detect," and "identify," and court and administrative opinions interpreting those terms in contexts other than BIPA (Mot. at 12-13) are particularly unavailing here where the term "biometric identifier" is already expressly defined in BIPA. *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1093 (N.D. Ill. 2017) ("If the text bears a plain meaning, then that is the end of the interpretive exercise, and no other interpretive aids should be used." (citing *People v. Fitzpatrick*, 158 Ill.2d 360, 364-65 (1994)).

geometry. As noted above, the items specifically listed in the statute as biometric identifiers are, by definition, capable of being used to identify an individual. *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) (noting that BIPA "defines 'biometric identifier' with the *complete* set of *specific* qualifying biometric identifiers. Each specific item on the list fits within the meaning of the term 'biometric identifier,' that is, a biology-based set of measurements ('biometric') that can be used to identify a person ('identifier')." (emphasis in original)). Because Plaintiffs allege that Elf collected scans of their face geometry through the VTO and remain in possession of them,[9] they have necessarily also alleged that the biometrics at issue are ones Elf could use to identify them. The remaining cases cited by Elf do not include or address a purported requirement to allege the biometrics at issue were used by the defendant to identify the plaintiff, instead laying out basic pleading rules and definitions, which Plaintiffs have met.[10]

### 3. Plaintiffs Do More Than Just Parrot the Language of BIPA.

Plaintiffs have also done more than "merely parrot" BIPA in their § 15(a) claim. To state a cause of action under § 15(a), Plaintiffs need only allege that Elf was "in possession of" biometrics and failed to "develop, publicly disclose, and comply with a data-retention schedule and guidelines for the permanent destruction of biometric data when the initial purpose for collection ends." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154 (7th Cir. 2020). Plaintiffs have done so here. CAC, ¶¶ 13, 15, 74-75, 99-101, 108. These allegations distinguish

---

[9] CAC ¶¶ 10-11, 14, 56-60, 68-72, 89-90, 93, 97-98, 106-108, 113.

[10] *Trio v. Turing Video, Inc.*, 2022 WL 4466050, at *12 (N.D. Ill. Sept. 26, 2022) (confirming plaintiff must allege sufficient facts to allow for a plausible inference that defendant actually did collect plaintiff's biometric identifier or biometric information); *Rivera*, 238 F. Supp. 3d at 1094 (drawing the uncontroversial conclusion that "biometric identifiers" under BIPA mean a biology-based set of measurements that can be used to identify a person); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at **1-5 (N.D. Ill. Sept. 15, 2017) (defining what a facial geometry scan is); *see also*, *Rosenbach*, 129 N.E.3d at 1206, *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 58 (2021), and *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶¶ 43-44, each noting biometric identifiers are unique to the individual.

this case from *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 824 (N.D. Ill. 2022), where the complaint "d[id] not meaningfully allege that [defendant] violated the 'full panoply' of section 15(a)'s requirements by unlawfully retaining her biometric[s]" beyond the required time limits, and *Harvey v. Resurrection Univ.*, 2022 WL 3716213, at *2 (N.D. Ill. Aug. 29, 2022) (same).

### C.   Plaintiffs' Section 15(a) Claims are Ripe

Elf's argument that Plaintiffs' § 15(a) claims are not ripe because a "private entity is only required to develop a written policy within 3 years of the individual's last interaction with the private entity" ignores BIPA's text and an on-point decision by the Appellate Court of Illinois issued shortly before Elf filed its Motion. Mot. at 15.[11] In *Mora v. J&M Plating, Inc.*, --- N.E.3d ----, 2022 IL App (2d) 210692 ¶ 1, the Appellate Court of Illinois held that § 15(a) of BIPA contains an "explicit trigger" for development of the required retention-and-destruction schedule—"the private entity's possession of biometric data," and explained that:

> Our reading of section 15(a) is consistent with section 15(b)'s requirement that, prior to the time a private entity collects, captures, purchases, or otherwise obtains a subject's biometric data, it must first inform the subject of the "length of term for which [biometric data] is being collected, stored, and used." *Id.* § 15(b)(2). We can discern no rational reason for the legislature to have intended that a private entity "develop" a "retention schedule and guidelines for permanently destroying" (*id.* § 15(a)) biometric data at a *different* time from that specified in the notice requirement in section 15(b), which itself must inform the subject of the length of time for which the data will be stored (*i.e.*, retained), etc.

*Id*. ¶¶ 38, 39. *See also Nseumen v. Dal Glob. Servs., Inc.*, 2021 WL 4728707, at *2 (N.D. Ill. Oct. 11, 2021) (obligation to develop and comply with a policy that requires destruction of biometrics within 3 years "doesn't suggest that the entity may wait those three years to establish its policy").[12]

---

[11] Elf's reading of § 15(a) leads to the absurd result that an entity subject to BIPA could be required to comply with guidelines for permanently destroying the biometric identifiers and biometric information in its possession several years before it had to actually develop and publish those very same guidelines.

[12] *Horn v. Method Prod., PBC*, 2022 WL 1090887, at *4 (N.D. Ill. Apr. 12, 2022) and *Kislov v. Am. Airlines, Inc.*, 566 F. Supp. 3d 909, 914 (N.D. Ill. 2021) are distinguishable because they were decided before *Mora* and the court's rationale in both cases would reward a defendant's failure to comply with one part of BIPA by protecting them from being sued for violating another part of BIPA, running directly counter to BIPA's

### D.      Plaintiffs Have Properly Alleged Their Demand For Heightened Damages

Elf further argues that Plaintiffs failed to allege facts showing that Elf's conduct was reckless or intentional. Mot. at 16. This is inaccurate. "Rule 8 does not require a plaintiff to plead damages with particularity," and "even treating state of mind as an element of a BIPA claim, by alleging that [defendant] has made no effort to comply with BIPA, [plaintiff] has pleaded facts to suggest that [defendant] acted with negligence, recklessness, or intent." *Horn*, 2022 WL 1090887, at \*2. *See also*, *Neals*, 419 F. Supp. 3d at 1092-93 (rejecting argument that plaintiff failed to include facts that would entitle her to statutory damages because the rules do not require a plaintiff to prove her case at the pleading stage); *Rogers v. BNSF Ry. Co.*, 2019 WL 5635180, at \*5 (N.D. Ill. Oct. 31, 2019) ("BIPA took effect more than ten years ago," and the plaintiff alleges " [defendant] has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible."). The CAC alleges that Elf "sells the image of socially responsible cosmetics to consumers," yet is knowingly collecting detailed and sensitive biometrics, including complete facial scans, through the VTO, "unbeknownst to its website users," CAC ¶¶ 10-11, 14, 76-77, and Elf's amendment of its Terms to include language regarding its collection and retention of VTO user's biometrics, *id*. ¶¶ 65-67, shows Elf was aware of BIPA's requirements. Plaintiffs have clearly alleged facts sufficient to infer Elf's intentional and/or reckless state of mind, and support their demand for heightened damages.[13]

### IV.      <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny Elf's motion to dismiss in its entirety.

---

intended purpose of serving "[t]he public welfare, security, and safety" by "regulating the collection, use, safeguarding, handling, storage, retention, and destruction" of biometrics. 740 ILCS 14/5(g).

[13] In the alternative, if the Court grants Elf's Motion in any respect, it should grant Plaintiffs leave to file an amended complaint and conduct discovery. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)

Dated: January 18, 2023                Respectfully submitted,

                                    */s/ Nada Djordjevic*

ADAM J. LEVITT
alevitt@dicellolevitt.com
AMY E. KELLER
akeller@dicellolevitt.com
NADA DJORDJEVIC
ndjordjevic@dicellolevitt.com
SHARON CRUZ
scruz@dicellolevitt.com
**DiCELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

STEVEN M. NATHAN (admitted pro hac vice)
snathan@hausfeld.com
KATHERINE HANSSON (admitted pro hac vice)
khansson@hausfeld.com
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, New York 10004
Telephone: (646) 357-1100

JAMES J. PIZZIRUSSO (admitted pro hac vice)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 540-7200

Don Bivens*
don@donbivens.com
**DON BIVENS PLLC**
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

***Counsel for Plaintiffs and the Proposed Class***

*\*Pro Hac Vice Admission*
*Application Forthcoming*

16